## THE MUTUAL MILL INSURANCE COMPANY

*v.*

### CLARENCE GORDON, use, etc.

*Filed at Mt. Vernon June 20, 1887.*

1. MORTGAGOR AND MORTGAGEE—*a joint indebtedness made several, by apportionment — consideration—Statute of Frauds.* The partition of mortgaged premises between the mortgagors, who are tenants in common, is a good consideration for an agreement on the part of the mortgagee to divide the mortgage debt and apportion the same among the several mortgagors.

2. So if a mortgagee, while the holder of the debt secured, enters into a parol agreement with the mortgagors, and they with him and each other, for the partition of the mortgaged lands, and that each one of the mortgagors shall pay only a certain part of the debt, the agreement will be valid, and each one of the former joint debtors will become an individual debtor, and liable only for the amount allotted to him to pay; and this will be the rule, in equity, even as against a *bona fide* assignee of the mortgage debt before maturity.

3. In this case, A, B and C, being tenants in common of several tracts of land, upon all of which they had given a mortgage to secure their note for $37,000, payable in five years, by an arrangement with the mortgagee made a. partition of the lands and apportioned the mortgage debt between themselves, so that A was to pay $17,000 on the property assigned to him, and the other two were each to pay $10,000, which was to rest on their lands in severalty, and the mortgagee agreed, by parol, to hold each one's premises only for his part of the debt: *Held,* that the agreement of the mortgagee was based on a valid consideration, and that the Statute of Frauds had no application to the agreement.

4. Release of mortgage—*by parol.* A parol release or accord and satisfaction of notes secured by mortgage, as between the parties, will operate; to release or discharge the mortgage, which is but an incident to the debt.

5. Insurance—*effect of untrue answers to ambiguous questions.* A party seeking to insure mill machinery, and shafting, gearing, belting and tools in his mill, was required to answer this among other questions: "What is the present cash value of the property to be insured, exclusive of land and property not specified?" and he answered, "25,000," which was the value of the entire mill property: *Held,* that the question being somewhat ambiguous, should be construed more favorably for the insured, and that he had reasonable ground for believing he was called upon to give the whole value of the mill property.

6. Same—*estoppel to dispute statement in policy under which party claims.* Where a mortgagor procures a policy of insurance for the benefit of his mortgagee, the latter, by seeking to collect the amount of a loss under the same, will be equitably estopped from disputing the truth of the representations on which the policy was issued.

Appeal from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of Randolph county; the Hon. Geo. W. Wall, Judge, presiding.

Assumpsit was brought in the circuit court of Randolph county, upon a policy of insurance issued by the Mutual Mill Insurance Company to James Gordon, and by him assigned to his son, Clarence Gordon. The facts are:

On January 25, 1884, James Gordon, D. P. Barker and R. H. Roseborough were joint owners of the Union Mills, at Sparta, Randolph county, and of certain other real estate in that county. Having failed in business before this time, and being desirous of effecting a settlement with their creditors,

they borrowed $37,000, for which they gave their joint and several promissory note, payable five years after its date, to the order of Borders & Boyle, with interest at the rate of six per cent per annum, from date, payable annually. To secure the payment of this note, Gordon, Barker and Roseborough executed, under their hands and seals, a mortgage in due form, on the property covered by the policy in suit, and upon other joint property then owned by them. About the 18th of February, 1884, these mortgagors partitioned this joint property between themselves, and each took possession, severally, of the part set off to him, but allowed the $37,000 mortgage to remain upon all the property. They agreed, however, between themselves, orally, and with Borders & Boyle, that James Gordon, to whom the property covered by the policy was allotted, should only pay $17,000 of the mortgage debt, and this mill property should only be charged with that amount, and that Barker and Roseborough should pay the remaining $20,000. No part of this $37,000 has ever been paid.

On October 1, 1884, James Gordon, owner of the property insured,—being the same covered by said mortgage,—wrote, signed and delivered to the Mutual Mill Insurance Company, an application for $2000 insurance on mill machinery, shafting, gearing and belting while in said mill, on the receipt of which the company issued to him, from its home office in Chicago, the policy in suit, for that sum, in accordance with said application. The company knew nothing about the property to be insured, save the information contained in said application. The face of this policy states : "This insurance is based upon an application of the insured, filed in the office of this company, of even number and date with this policy, which application is made a part of this contract and a warranty on the part of the insured." And further, upon its face, reads: "If the insured shall make any false representation of the condition, situation or occupancy of the property hereby insured, or shall conceal any fact material to the risk, or in

case of over-valuation or any misrepresentation whatever by the insured, either in the written application or otherwise, * * * in each and every case this policy shall become void."

The application, among other things, contains the following questions and answers, all the answers being written by Mr. Gordon himself, to-wit: "Are you sole owner of the property to be insured (exclusive of land)?—Yes. Age of building?—Twenty-seven years. Is it occupied by owner?—Yes. What is the present cash value of the property to be insured, exclusive of land and property not specified?—$25,000. What is the value of land?—$1000. Is there any incumbrance?—Yes. What is the amount and character of incumbrance, to whom payable, and when?—$17,000; mortgage to Borders & Boyle; five years from February, 1884. What part of principal or interest is past due and unpaid?—None. Do you own the land in fee simple?—Yes." Such loss as should be ascertained to be due James Gordon, if any, under the policy, was made payable to Borders & Boyle, as their interest might appear.

On the 22d of November, 1884, James Gordon, having sold the property in question to his son, Clarence Gordon, transferred to him all his right, title and interest in the policy, etc., "subject to the terms and conditions therein mentioned and referred to." The property insured was destroyed by fire on the 17th of May, 1885.

On the trial, the court gave the following, among other instructions, at the instance of the plaintiff:

"The court instructs the jury, that if you believe, from the evidence, that James Gordon, R. H. Roseborough and D. P. Barker were the joint owners of certain land and real estate, among which was the mill property declared on in this suit; and if you further find, from the evidence, that Borders & Boyle owned and held a mortgage for the sum of $37,000 on all the said lands and real estate; and if you further find, from the evidence, that the said parties owning the property

made and mutually agreed to make partition of said lands, and that the owners of said lands did make such partition, and did execute and deliver, each to the other, quitclaim deeds to said lands, and that as a part of said arrangement said Borders & Boyle and the owners of the property did consent to such partition, and did agree and consent that the mortgage debt due on all said lands should be divided and allotted on and among the owners and debtors, and that by said arrangement the portion of the debt placed on the mill property in question was $17,000, and that only that sum should be collected from said mill property, and that under said partition said mill property was deeded to James Gordon upon that understanding, and that there was no other incumbrance upon said mill property at the time the application was made by James Gordon to defendant for insurance upon said mill property,—that he was justified in stating in the application that the incumbrance on the mill was only $17,000."

The defendant asked the court to instruct the jury as follows:

"The court instructs the jury, that the only property covered by the policy in this case is mill machinery and shafting, gearing, belting and tools, while in the mill building; that by the terms of the written application the insured was required to answer the following questions, among others, to-wit: 'What is the present cash value of the property to be insured, exclusive of land and property not specified?' and James Gordon, the insured, answered, '$25,000.' Q. 'Is there any incumbrance?' and he answered 'Yes.' Q. 'What is the amount and character of the incumbrance, to whom payable, and when?' and he answered, '$17,000; mortgaged to Borders & Boyle; five years from February, 1884.' Now, the court instructs you, that by the terms of the policy these answers to said questions constituted express warranties,—first, that the property insured was of the value of $25,000; second, that

the incumbrance thereon did not exceed $17,000; and if either of these answers was untrue, the policy never became operative, and your verdict should be for the defendants."

The court, however, refused to give this instruction as asked, but modified it, and gave it as follows:

"The court instructs the jury, that the only property covered by the policy in this case is mill machinery and shafting, gearing, belting and tools, while in the mill building; that *if*, by the terms of the written application, the insured was required to answer the following questions, among others, to-wit: 'What is the present cash value of the property to be insured, exclusive of land and property not specified?' and James Gordon, the insured, answered, '25,000.' Q. 'Is there any incumbrance?' and he answered, 'Yes.' Q. 'What is the amount and character of the incumbrance, to whom payable, and when?' and he answered, '$17,000; mortgaged to Borders & Boyle; five years from February, 1884.' Now, the court instructs you, that *if*, by the terms of the policy, these answers to said questions constituted express warranties,—first, that the property insured was of the value of $25,000; second, that the incumbrance thereon did not exceed $17,000; and if either of these answers was untrue, the policy never became operative, and your verdict should be for the defendant."

Judgment was rendered in favor of the plaintiff, which was affirmed on appeal to the Appellate Court for the Fourth District, from which judgment of affirmance the present appeal is prosecuted.

Messrs. TAYLOR & POLLARD, for the appellant:

That the policy and application constitute an express warranty that the incumbrance, at the date of the application, was only $17,000, see *Thomas v. Insurance Co.* 108 Ill. 92; *Davenport* v. *Insurance Co.* 6 Cush. 340; *Byers* v. *Insurance Co.* 35 Ohio St. 606; May on Insurance, secs. 156, 157.

The substantial mis-statement of a fact which the insurer has made essential by a precise interrogatory, in the absence of anything which limits or qualifies the obligation to answer correctly, avoids the policy without an express stipulation to that effect; and it matters not whether such mis-statement was given by accident, mistake or design, the effect is the same,—it avoids the policy. *Davenport* v. *Insurance Co.* 6 Cush. 340; *Clark* v. *Insurance Co.* id. 347; *Hayward* v. *Insurance Co.* 10 Cush. 444; *Wilber* v. *Insurance Co.* id. 446; *Draper* v. *Insurance Co.* 2 Allen, 569; *Towne* v. *Insurance Co.* 7 id. 51; *Thomas* v. *Insurance Co.* 108 Ill. 100.

Whether the fact stated be material to the risk or not, is of no consequence, the contract being that the matter is as represented; and unless it is so, whether from fraud, mistake, negligence or other cause, the policy does not become operative. Such warranties are in the nature of conditions precedent, and if not strictly true, avoid the policy. *Thomas* v. *Insurance Co.* 108 Ill. 100; *Insurance Co.* v. *Wright*, 22 id. 474; *Insurance Co.* v. *Fish*, 71 id. 620; *Barteau* v. *Insurance Co.* 67 N. Y. 595; *Witherell* v. *Insurance Co.* 49 Maine, 200; *Wall* v. *Insurance Co.* 14 Barb. 385; *Insurance Co.* v. *Cooper*, 50 Pa. St. 339; *Woolen Co.* v. *Insurance Co.* 21 Conn. 19; *Sheldon* v. *Insurance Co.* 22 id. 235; *Davenport* v. *Insurance Co.* 6 Cush. 340; *Hayward* v. *Insurance Co.* 10 id. 444; *Fails* v. *Insurance Co.* 7 Allen, 50; *Jacobs* v. *Insurance Co.* id. 132; *Towne* v. *Insurance Co.* id. 51; *Insurance Co.* v. *Winslow*, 3 Gray, 431; 8 id. 38; *Packard* v. *Insurance Co.* 2 id. 334; *Byers* v. *Insurance Co.* 35 Ohio St. 614; *Campbell* v. *Insurance Co.* 98 Mass. 402; *Hutchins* v. *Insurance Co.* 11 Ohio St. 480.

Failure by the insured to disclose the full amount of the incumbrance on the property insured, in answer to the question in the application touching such amount, is as much a breach of warranty as to deny that there is any. Wood on Insurance, 302; May on Insurance, (2d ed.) 290; Flanders on Insurance, 280; *Byers* v. *Insurance Co.* 35 Ohio St. 614; *Jacobs*

v. *Insurance Co.* 7 Allen, 135; *Brown* v. *Insurance Co.* 11 Cush. 280.

No consideration was paid for the partial release of the mortgage. An agreement to abandon a valid claim, unless there be a consideration shown, is a mere *nudum pactum*. *Wilson* v. *Keeler*, 9 Bradw. 347; *McLean* v. *McBean*, 74 Ill. 135; *Renamaker* v. *Cordway*, 54 id. 303.

Borders & Boyle had the legal right to look to each individually for the entire debt. Now, to assent to an apportionment of the debt, and give up the joint liability, would be an assent to relinquish part of a valid claim, for which they got nothing in return. So, also, agreeing orally to look to each, only, for a portion of the entire debt, when they could look to each for all of it, amounts to the same thing. All such agreements are mere *nudum pactum*. *Wilson* v. *Keeler*, 9 Bradw. 347; *McLean* v. *McBean*, 74 Ill. 135; *Renamaker* v. *Cordway*, 54 id. 303; *Weaver* v. *Ferris*, 85 id. 361; *Crawford* v. *Millspaugh*, 13 Johns. 87; *Loach* v. *Farnum*, 90 Ill. 368.

Messrs. KOERNER & HORNER, for the appellee:

By the agreement with the mortgagees, the mortgage was apportioned to their satisfaction. There can be no question that they were bound by it after the other parties had acted in accordance with it. After that, they were estopped to repudiate the agreement. *Shepley* v. *Rangley*, 1 W. & M. 217; *Pickard* v. *Sears*, 6 A. & E. 474; *Chapman* v. *Hamilton*, 19 Ala. 121; *Quigley* v. *Riley*, 50 Ill. 304.

A paid mortgage, though not released of record, is not an incumbrance; neither is a fraudulent mortgage, or one invalid, for any reason whatever, an incumbrance. *Merrill* v. *Insurance Co.* 73 N. Y. 457; *Hawk* v. *Insurance Co.* 11 Wis. 191; *Insurance Co.* v. *Jackson*, 83 Ill. 308; May on Insurance, 192.

Has the insured, then, acted in good faith? Undoubtedly he has, although lawyers might differ as to whether the con-

struction of the law on the question was the correct one. He answered as best he knew. The question he answered was one, besides, on which the company was advised. The $37,-000 mortgage was of record, and everybody is presumed to know the record as well as the law. Finding the apparent inconsistency of the answer with the record, the company was put on inquiry, and undoubtedly did inquire and was in-informed of the true condition of affairs. *Insurance Co.* v. *McKee,* 94 Ill. 400; *Insurance Co.* v. *Chestnut,* 50 id. 116; *Insurance Co.* v. *Wright,* 22 id. 474.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The Appellate Court, by affirming the judgment, leave us only to inquire whether there was error of law in giving and refusing instructions, and in admitting evidence over appellant's objection. In the view we take of the case, there are but two questions of law: First, was there material error in giving the instruction, at the instance of appellee, set out in the preceding statement? Second, was there material error in permitting the witness Gordon to state the circumstances under which he answered that the value of the property was $25,000?

*First*—The objections urged against the validity of the agreement recited in the instruction are, first, that it was without consideration; and second, that it was not in writing.

1. The objection that it was without consideration assumes that there was simply an agreement to accept a less security for a greater, whereas the real agreement is, that parties who have hitherto been tenants in common of an entire property upon which there is a mortgage, shall divide the property and the mortgage debt, and each enter upon, and thenceforth hold and use in severalty, the part set off to him by the division, and each pay, severally, the portion of the mortgage debt assigned to him. The agreement is an entire one, and the consideration of each part enters into and forms a part of the

consideration of every part of the agreement. We think this was sufficient. 1 Chitty on Contracts, (11th Am. ed.) 28.

2. The Statute of Frauds can have no application to the case. A parol release, or accord and satisfaction of the notes, as between the parties, is plainly sufficient. 2 Chitty on Contracts, (11th Am. ed.) 1147, and authorities cited in note k. The payment or discharge of the debt evidenced by the notes operates to release the mortgage, which is but an incident to the debt. (*Ryan* v. *Dunlap et al.* 17 Ill. 40; *Pollock et al.* v. *Maison et al.* 41 id. 516; *McMillan et al.* v. *McCormick*, 117 id. 79.) And if the notes should be assigned before due, although the assignment would carry the mortgage in equity, yet since it is only in equity that the assignment can have that effect, the same equitable defences may be interposed against the promissory notes in the hands of the assignee, that can be interposed against them in the hands of the payee. (*Olds* v. *Cummings*, 31 Ill. 188; *Shippen et al.* v. *Whittier*, 117 id. 282; *Petillon* v. *Noble et al.* 73 id. 567.) And so, the contract being valid as between the mortgagor and mortgagee, the mortgage was for but $17,000, and the instruction was right. This insurance, moreover, is for the benefit of these mortgagees, and the insurance policy having been issued upon the faith that that was the extent of their mortgage, the mortgagees would, upon familiar principles, be equitably estopped to contend, as against the insurance company, that it was more. And so, also, upon the doctrine of *Olds* v. *Cummings* and *Shippen* v. *Whittier, supra,* any subsequent assignee of the notes would, in this respect, but stand in their shoes, and be entitled to interpose the same defence to the assertion of rights in equity, under the mortgage.

*Second*—It was error to allow the witness to state why he valued the property at $25,000, but, in our opinion, it could do no harm. The questions put were somewhat ambiguous, and are, therefore, to be construed most favorably for the insured. We are of opinion, that in view of that ambiguity

there was reasonable ground that he might have believed that he was required to give the whole value of the property, excluding the land,—not merely that of the mill machinery,—which he did, correctly. And this was the purport of the answer of the witness,—that he supposed the question alluded to the whole value of the property. It was the duty of the company, if they desired explicit and lucid answers in this respect, to frame their questions so that they could not mislead. The views expressed in the opinion of the Appellate Court (*Mutual Mill Ins. Co.* v. *Gordon,* 20 Bradw. 559,) upon this point, are somewhat more extended, and have our entire concurrence.

In conclusion, it is only necessary to add, that we concede the court erred in refusing to state to the jury whether the clause in the insurance policy in relation to the amount of the incumbrance was a warranty; but since the first instruction, given at the instance of appellee, was correctly given, that error can have worked no harm to appellant. Had that instruction been correctly given as asked, the result must have been just as it is.

The judgment is affirmed

*Judgment affirmed.*