WILLIAM D. MOORE, Plaintiff-Appellant, *v.* CAROLE J. LEWIS, Defendant-Appellee.

First District (4th Division)    No. 76-1570

Opinion filed July 28, 1977.

Harvey Melinger, of Chicago, for appellant.

J. Stirling Mortimer, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff in this case, disappointed in his efforts to buy back a mortgage on his property for less than one-half of its amount, filed suit against Carole J. Lewis (defendant), the vice president of Calumet Federal Savings and Loan Association of Chicago (Savings and Loan), alleging that she misrepresented her lack of authority to make a contract for the Savings and Loan and that he was damaged thereby since he had made repairs in reliance on the contract. The trial court granted a summary judgment for the defendant. We affirm on the grounds that any repairs made could not have been made in reliance on the alleged contract since they preceded it. In addition we hold that under the circumstances the plaintiff could not have been damaged by repairing his own property. Furthermore, if, as alleged on oral argument, the defendant was authorized to make the contract, she cannot be held liable for the Savings and Loan's failure to honor it.

According to the plaintiff's complaint as supplemented by his affidavit, the Savings and Loan owned a mortgage on his property. The balance due on the mortgage on October 24, 1974, was about $26,275.19. At that time the building was in a state of disrepair, having no heat, having building code violations and needing extensive repairs, including new electrical wiring. Suit had been filed against the plaintiff by the city for building code violations. On October 24, 1974, defendant, a vice president of the Savings and Loan, holding herself out to be its duly authorized agent and not indicating any limitations on that authority, by telephone offered to sell the mortgage to the plaintiff for $10,000. She informed the plaintiff's attorney that the offer would remain open until October 29, 1974. On October 29, the plaintiff accepted the offer to purchase the mortgage payable $1,000 down and $9,000 within 30 days; he paid $1,000 to the defendant on October 21.[1] Defendant confirmed the agreement on October 29, 1974.

---

[1] This, however, would appear to be impossible since the offer was not made until October 24, and, indeed, the plaintiff in his sworn affidavit says the offer was accepted and the downpayment was made on or about the 31st.

According to the complaint, as corrected by the bill of particulars, the plaintiff from October 24 to October 29, 1974, expended large sums of money repairing the building in reliance on the offer to sell and the agreement to sell. Specifically, the plaintiff converted the boiler to a gas boiler, restored heat to the building, replaced radiators, made arrangements for the correction of the electrical violations to the building and made certain other, lesser, repairs. In all, $2,500 was spent. Had the defendant not made the offer and agreement to sell the mortgage for $10,000, the plaintiff would not have made any repairs on the building but would have let it go into foreclosure.

On October 31, 1974 (the day after the offer was accepted and the downpayment made according to the plaintiff's sworn affidavit), defendant informed the plaintiff that the Savings and Loan would not sell the mortgage for $10,000 and that she was going to return the $1,000. The plaintiff informed her he had made extensive repairs to the building in reliance on the agreement and demanded that the Savings and Loan perform the agreement. Plaintiff later learned that defendant had no authority to enter into the agreement without appropriate Board action and that Board action approving the sale was not obtained.[2]

Subsequently the Savings and Loan foreclosed on the mortgage and has had a receiver appointed to manage the building.

In her affidavit in connection with the motion for summary judgment the defendant stated that she had no authority to contract except under and subject to the approval of the Board of Directors; that she did not sign the letter submitted by the plaintiff's attorney, purportedly setting forth the terms of the agreement; that she immediately returned the plaintiff's check to him and that the check for $1,000 tendered by him without any agreement (the attorney's letter being sent on November 1) did not conform to the terms discussed on the telephone which were that $10,000 and a written agreement for purchase were to be submitted.

The trial court granted the defendant's motion for summary judgment.

The purpose of a summary judgment proceedings is to determine whether or not a genuine issue of fact exists. (*Anger v. Gottfried* (1975), 29 Ill. App. 3d 559, 331 N.E.2d 576.) A summary judgment can only be granted if there was no question of fact to be determined. (23 Ill. L. & Prac. *Judgments* §73 (1956).) Thus, the mere fact that the defendant contradicted some of the plaintiff's allegations would not be sufficient grounds for the granting of a summary judgment. Accordingly, in determining whether the motion for summary judgment was properly

---

[2] Plaintiff filed suit against Calumet Savings and Loan Association for specific performance which was denied, not on this ground but on the grounds that the agreement violated the statute of frauds and, subsequently, by amended complaint, the action proceeded only against Carole Lewis. No appeal was taken from the ruling of the trial court in favor of the Savings and Loan.

granted we will assume that in case of conflict all facts alleged by the plaintiff were true.

## I.

■■ The plaintiff in his complaint and brief complained that he had been damaged by the defendant's concealment of her lack of authority to agree to sell the mortgage. The defendant's contention, in response, that she did not sign the contract is irrelevant. The plaintiff under this theory is not attempting to sue the defendant on the contract. Rather, the plaintiff is claiming that he was damaged because the defendant purported to make a contract in the name of the Savings and Loan which she was not authorized to make. It is well settled that one who purports as agent to enter into a contract upon which the principal is not bound because the agent has contracted without or in excess of the authority given is personally liable for the damage this occasions to the contracting party because, in effect, the agent warranted his or her authority. (3 Am. Jur. 2d *Agency* §298, 299 (1962); *Fieschko v. Herlich* (1961), 32 Ill. App. 2d 280, 172 N.E.2d 376.) Accordingly, accepting the plaintiff's allegations as true for purposes of review, the defendant could be found liable for a breach of the implied warranty of authority unless (1) the contract for some reason other than lack of authority was not binding on the Savings and Loan; (2) any damages which occurred were not caused by the breach of warranty or (3) the plaintiff was not damaged by the defendant's actions. We will consider each of these in turn.

## II.

■■ The defendant has rested her defense mainly on the contention that the alleged contract with the Savings and Loan would not have been enforceable since it was oral, thus violating the Statute of Frauds. Of course, if this were true, the plaintiff could not complain that the defendant's lack of authority also rendered the contract unenforceable. (2 Restatement (Second) of Agency §329, Comment J (1958).) However, the Statute of Frauds has no application to this case. In effect, what the plaintiff was seeking was a discharge of the debt upon payment of $10,000, and a parol release or accord and satisfaction of the notes is sufficient to release the debt. (*Mutual Mill Insurance Co. v. Gordon* (1887), 121 Ill. 366, 12 N.E. 747; *Bradley v. Lightcap* (1903), 201 Ill. 511, 66 N.E. 546, *rev'd on other grounds*, (1904) 195 U.S. 1, 49 L. Ed. 65, 24 S. Ct. 748; *Ryan v. Dunlap*, (1855), 17 Ill. 40.) Indeed a mortgage, which in this State is only regarded as a mere incident to the debt (*Ryan v. Dunlap* (1855), 17 Ill. 40; *Bradley v. Lightcap* (1903), 201 Ill. 511, 66 N.E. 546, *rev'd on other grounds*, 195 U.S. 1, 49 L. Ed. 65, 24 S. Ct. 748; 27 Ill. L. & Prac. *Mortgages* §144 (1956)), is not assignable at law. (*Bradley v.*

*Lightcap* (1903), 201 Ill. 511, 66 N.E. 546, *rev'd on other grounds,* 195 U.S. 1, 49 L. Ed. 65, 24 S. Ct. 748; *Miller v. Frederick's Brewing Co.* (1950), 405 Ill. 591, 92 N.E.2d 108.) It is the debt which is assigned, and the transfer of the debt carried with it the mortgage security. *Bradley v. Lightcap* (1903), 201 Ill. 511, 66 N.E. 546, *rev'd on other grounds,* 195 U.S. 1, 49 L. Ed. 65, 24 S. Ct. 748; 72 Am. Jur. 2d *Statute of Frauds* §89 (1974).

### III.

Since the Statute of Frauds was not applicable, the plaintiff's acceptance of the defendant's offer would have given rise to a contract if the defendant had been authorized to make the offer. Accordingly, the plaintiff would be entitled to recover for any damages sustained because of the defendant's lack of authority. (2 Restatement (Second) of Agency §329, Comment J (1958).) However, the plaintiff cannot recover for the repairs because the loss was not caused by the defendant's unauthorized act.

■■ According to plaintiff's complaint, the bill of particulars and his affidavit, the offer was made on October 24. The repairs were made between October 24 and October 29. But an offer does not ripen into a contract until it is accepted and the offer was not accepted until October 29 or October 31. In other words, at the time the repairs were made, there was no apparent contract. Thus, the plaintiff could not have made the repairs in reliance on the existence of a contract to sell him the mortgage. Since he did not act in reliance on the existence of the contract, it is immaterial whether the defendant had authority to make the offer or not, for he could not have been misled to his detriment by her concealment of any lack of authority until after he had accepted the offer. See 3 Am. Jur. 2d *Agency* §298, 299 (1962).

■■ Nor is this conclusion affected by the fact that, according to the plaintiff, the defendant promised the offer would remain open until October 29. There was no consideration for the promise and therefore it would not have been enforceable even if authorized. (1 Williston on Contracts §55 (3d ed. 1957).) Accordingly, until the plaintiff accepted the offer, there was no apparent contract upon which he was entitled to rely.[3]

Since we have found that any damages suffered did not arise from the defendant's breach of warranty we need not determine whether reliance upon the defendant's promise could reasonably be found in this case even

---

[3] Expenses incurred prior to the time a contract is entered into are not recoverable if the contract is breached since they are not attributable to the contract or to the breach. (*Chicago Coliseum Club v. Dempsey* (1932), 265 Ill. App. 542; 22 Am. Jur. 2d *Damages* §158 (1965).) Thus, even if the Savings and Loan had made the contract, it would not, if it had breached the contract, been liable for such expenses. Accordingly, the defendant cannot be held liable for these expenses on the theory the bank would have been liable for them had a valid contract been made.

though the plaintiff was at all times represented by counsel who should have known that the defendant could not have had authority to enter into such a contract without the approval of the Board of Directors. Obviously, there can be no recovery against an agent where the other party was not ignorant of the lack of authority and did not act in reliance upon the express or implied representations that the agent had authority. 3 Am. Jur. 2d *Agency* §298 (1962).

## IV.

In addition, we note that the plaintiff has failed to show he was injured by the plaintiff's actions. The plaintiff has not alleged that he is not responsible for the mortgage debt. If he is responsible, then upon the sale of the property, he will be liable for any deficiency. (27 Ill. L. & Prac. *Mortgages* §481 (1956).) We must assume that any repairs to the property increased the value of the property so as to reduce the amount of the deficiency or even perhaps create a surplus which the plaintiff would be entitled to receive.

## V.

■■ On oral argument the plaintiff apparently abandoned his theory or recovery based on the defendant's lack of authority, repeatedly stating that he was seeking to recover against the defendant because she had been authorized to make the contract. But, unless an agent was unauthorized to make a contract on behalf of a disclosed principal (which the Savings and Loan obviously was) and concealed or misrepresented this lack of authority, there can be no basis for a suit against the agent unless he or she has expressly or by inference bound himself or herself to become personally responsible. (*Fieschko v. Herlich* (1961), 32 Ill. App. 2d 280, 172 N.E.2d 376, 1 Ill. L. & Prac. *Agency* §130 (1953).) This is true even though the principal breaches the agreement, as the agent is not liable for the acts of a disclosed principal unless he takes some active part in violating some duty the principal owes to a third person. (*Landau v. Landau* (1951), 409 Ill. 556, 101 N.E.2d 103; 2 Restatement (Second) of Agency §328 (1958).) The plaintiff has nowhere alleged that the defendant bound herself to become personally responsible on the contract.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.