LOUIS KALALINICK, Plaintiff-Appellee, *v.* HARRY KNOLL, Defendant.—
(COUNTRY MUTUAL INSURANCE COMPANY *et al.*,
Defendants-Appellants.)

First District (4th Division)    No. 80-1684

Opinion filed June 11, 1981.

Beverly, Pause, Duffey & O'Malley, of Chicago (Frank J. Pause, Robert O. Duffy, Thomas J. Brophy, and Michael W. Rathsack, of counsel), for appellants.

Joseph R. Curcio, Ltd., of Chicago (D. L. Bertelle, of counsel), for appellee.

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

The plaintiff filed suit against Harry Knoll for negligence and against his insurance carrier Country Mutual Insurance Company and its agent Townsend on an alleged settlement agreement. The suit in contract was voluntarily dismissed by the plaintiff, then reinstated. At trial on the contract claim, the trial court found there had been a settlement agreement, awarded judgment for the amount of the agreement plus prejudgment interest against both the insurer and its agent. Both appealed contending:

1. the court had no jurisdiction to reinstate the complaint once it had been voluntarily dismissed;

2. the agent Townsend cannot be personally liable on the contract;

3. the court erred in introducing into evidence a memorandum letter of the insurer which indicated that a settlement offer had in fact been made;

4. that the findings and judgment were against the manifest weight of the evidence;

5. that it was error to award prejudgment interest.

We agree with Townsend that, since the insurer for purposes of appeal has admitted that it is bound by any agreement made, the agent cannot be held liable on the agreement. Accordingly we reverse the judgment against the agent. We also agree with the insurer that the court erred in awarding prejudgment interest. We hold, however, that the court

did not err in reinstating the complaint, in considering the memorandum letter or in finding that there was a binding settlement agreement. Accordingly we modify the judgment against the insurer to delete the award of prejudgment interest and affirm as modified.

I

Obviously the first question which must be addressed by this court is whether the trial court had the power to reinstate the complaint since if it did not have the power to do so, the case must be reversed and dismissed.

Suit was filed by the plaintiff against the three defendants on May 26, 1975. Count I alleged that Harry Knoll on July 7, 1974, injured plaintiff by certain negligent acts. Count II alleged that Country Mutual and Wilbur Townsend on December 31, 1974, made a settlement offer which was accepted. Judgment under count II was requested in an amount equal to the difference between the verdict on count one, assuming the verdict was less than $20,000, and $20,000.

By stipulation, the insurer and its agent were given until June 1, 1976 to "appear, answer or otherwise plead." On May 24, 1976, count II was voluntarily dismissed on plaintiff's motion. The cause remained pending as to defendant Knoll and the order of dismissal contained no finding regarding appealability or enforcement.

On July 5, 1979, plaintiff's motion to reinstate count II of the complaint was granted. Knoll moved to vacate this order and the motion was denied on August 15, 1979, for want of standing. On July 24, the court granted plaintiff leave to file his second amended complaint, the third count of which was the same as the second count of the dismissed complaint. On August 15, 1979, plaintiff was granted leave to cause alias summons to issue to the insurer and its agent. It is clear from the record that both were in fact served.

Country Mutual entered its general appearance on October 1, 1979. On the same day it filed a motion to dismiss count III on the grounds the court had been without jurisdiction to set aside the voluntary dismissal because it had been entered without leave to reinstate. The motion was denied as was a later one filed by both the insurer and its agent. The insurer filed its answer to the amended complaint on December 3, 1979.

It was early established in *Weisguth v. Supreme Tribe of Ben Hur* (1916), 272 Ill. 541, 112 N.E. 350, and succeeding cases that a court has no jurisdiction to set aside an order of voluntary dismissal obtained upon motion of the plaintiff unless, at the time the nonsuit is taken, leave is given the plaintiff to move to set it aside; the plaintiff's only recourse in such cases is to begin anew. (See, *e.g., Bettenhausen v. Guenther* (1944), 388 Ill. 487, 58 N.E.2d 550; *Village of Arlington Heights v. American National Bank & Trust Co.* (1979), 72 Ill. App. 3d 744, 391 N.E.2d 108;

*Miller v. Bloomberg* (1978), 60 Ill. App. 3d 362, 376 N.E.2d 748; *People ex rel. Scott v. Police Hall of Fame, Inc.* (1978), 60 Ill. App. 3d 331, 376 N.E.2d 665; *Nashlund v. Sabade* (1976), 39 Ill. App. 3d 139, 350 N.E.2d 90, *appeal denied* (1976), 63 Ill. 2d 557; *Underwood v. Yellow Cab Co.* (1971), 131 Ill. App. 3d 449, 268 N.E.2d 254; *Fulton v. Yondorf* (1944), 324 Ill. App. 452, 58 N.E.2d 640; *Thompson v. Otis* (1936), 285 Ill. App. 523, 2 N.E.2d 370.) *Weisguth* involved a case where the sole plaintiff dismissed the suit against the sole defendant. The court in *Thompson* indicated that this rule was inapplicable where the case was dismissed as to only one of several defendants. Subsequently, however, the same court held in *Fulton* that the rule was applicable even where suit was dismissed against one of several defendants, and in both *Village of Arlington Heights* and *People ex rel. Scott*, the appellate courts held that the trial court had no power to allow the reinstatement of the suit against one defendant even though the suit had continued as to other defendants. In neither of the recent cases did the appellate court discuss the effect of the Supreme Court Rule 304(a). Ill. Rev. Stat. 1979, ch. 110A, par. 304(a).

■■ The earlier cases were decided before the enactment of section 50(2) of the Illinois Civil Practice Act of 1955 or Illinois Supreme Court Rule 304(a) which superseded it. Prior to their enactment a voluntary dismissal was final and appealable in all instances even when it disposed of fewer than all parties or claims. (Ill. Ann. Stat., ch. 110A, par. 304, Historical and Practice Notes, at 586 (Smith-Hurd 1968).) Under those circumstances the trial court obviously could not retain jurisdiction to reinstate a claim voluntarily dismissed. However Supreme Court Rule 304(a) provides:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party. The time for filing the notice of appeal shall run from the entry of the required finding. In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties."

It is well established that this rule and the statute it replaced apply to orders as well as judgments and that under them a trial court can reinstate a complaint involuntarily dismissed against one party as long as there are claims pending against other parties in the same action. (*Lindsey v. Harlan E. Moore & Co.* (1973), 11 Ill. App. 3d 432, 297 N.E.2d 8;

*Campbell v. Joslyn Manufacturing & Supply Co.* (1965), 65 Ill. App. 2d 344, 212 N.E.2d 512.) However, there is nothing in the rule which limits its effect to involuntary dismissals; rather it applies to *any* judgment or order. Accordingly, it appears that Rule 304(a) overturns the rule laid down in *Weisguth* to the extent that rule has been applied to cases involving multiple issues or parties and that in such instances under Rule 304(a) the court has jurisdiction to vacate a voluntary dismissal and reinstate the complaint not only on its own motion (see *Miller v. Bloomberg* (1978), 60 Ill. App. 3d 362, 376 N.E.2d 748), but even on the motion of the plaintiff. Whether it should do so in a particular case, or whether in its discretion it should find that plaintiff waived, abandoned or is estopped from claiming his position and rights (see *Weilmuenster v. H. H. Hall Construction Co.* (1979), 72 Ill. App. 3d 101, 390 N.E.2d 579), is not before us since the defendants have not contended that the trial court abused its discretion in vacating the dismissal. However, we would note that the defendants have at no time contended that they were prejudiced by the plaintiff's actions. Furthermore, since the dismissal was without prejudice and the statute of limitations had not run, it cannot be said plaintiff waived or abandoned his claim.

■■ Even if the *Weisguth* rule had been applicable here, the trial court still would have had jurisdiction because (1) the plaintiff filed a new complaint and served a new summons on the defendants in 1979; (2) the defendants filed a general appearance and litigated the merits of the case. It was established in *Thompson v. Otis* (1936), 285 Ill. App. 523, 2 N.E.2d 370, that bringing the previously dismissed defendant back into the case by the service of summons and by filing an amended complaint against him was just as efficacious as filing a new independent action against him. Likewise it was established in both *Weisguth* itself and in *Zandstra v. Zandstra* (1922), 226 Ill. App. 293, *appeal denied*, that the defendants to avail themselves of the right to question the jurisdiction of the court should either not have appeared at all or should have limited their appearance to the objection against the jurisdiction of the court and that when defendants appeared and contested the case on the merits, they conferred jurisdiction on the court, assuming that it had not had jurisdiction before.

## II

■■ We agree with the defendants that under the circumstances the judgment against the agent must be reversed. As we held in *Moore v. Lewis* (1977), 51 Ill. App. 3d 388, 366 N.E.2d 594, one who purports as agent to enter into contract upon which the principal is not bound because the agent has contracted without or in excess of the authority given is personally liable for the damage this occasions the contracting party as the agent has warranted his authority. Since, as we shall discuss later, the

insurer initially denied that the agent had authority to bind it to a $20,000 settlement agreement, the plaintiff properly brought suit against the agent as well. However, the insurer, for purposes of this litigation, conceded that if there is an agreement, it is liable on it. Accordingly, since the agent was only acting as an agent and did not contract as a party to the contract, and since he did not act in excess of his authority as that act has been ratified, he cannot be held liable on the contract. *Moore v. Lewis* (1977), 51 Ill. App. 3d 388, 366 N.E.2d 594.

## III

The insurer next contends that the judgment of the trial court was against the manifest weight of the evidence and that the admission of a certain letter of one of its employees was prejudicial error.

Trial was before the court without a jury. Only three persons testified: Townsend, the plaintiff and his attorney Storto.

Townsend was called by the plaintiff as a witness under section 60 of the Civil Practice Act. He had been a claims representative for Country Mutual for 20 years. Shortly after July 7, 1974, plaintiff's claim against Country Mutual's insured, Knoll, was assigned to him. After investigation he decided that this was a "liability" case. Based on that opinion, certain advance payments for medical bills, lost wages and other items of damage in the amount of $4,737.26 were made. As of December 23, 1974, he had ascertained that plaintiff's out-of-pocket expenses had reached $11,842.50.

In the 20 years Townsend worked for Country he had concluded a number of negotiations with attorneys by settling the cases. If they reached a satisfactory agreement on the value of the case, it was his custom to tell plaintiff's lawyer that the release would be in the mail. Sometimes he would also send out the draft with the release.

On December 31, 1974, Townsend had several telephone conversations with plaintiff's attorney Storto; he did not remember how many conversations. He considered the file to be in a position where it could be negotiated and his intentions in calling Storto was to attempt to negotiate a disposition of the case. He intended to offer money to settle the case. He had decided that the value of the case for settlement was $20,000, and he told Storto it was worth that much. However he denied ever offering $20,000 to settle the case and claimed that it was his usual practice to tell attorneys what he believed the value of the case irrespective of whether he had any money to spend.

There was a subsequent conversation on the same day with Storto. Townsend did not remember whether he called Storto or vice versa. Storto told him he had called his client who accepted the $20,000. Townsend told Storto he did not have $20,000. He did not tell Storto how much he did have.

On December 31, 1974, Townsend had a conversation with his superior Rocke. After being confronted with a memorandum letter dated "January 9, 1974 [sic]" summarizing the situation and followup, Townsend admitted that he had told Rocke he had discussed the claim with the attorney and had made an offer of $20,000. Defense counsel made no objection to the use of the memorandum at this time as long as Townsend was allowed to read it. The copy of the memorandum bore at the bottom the typed name Thomas E. Matthews, Regional Claims Manager—there was no written signature of the full name. To the side of the typed signature were the handwritten words "$20,000 includes the advance payments, M." Townsend stated he recognized the initial as being in Matthews' hand.

On December 31, 1974, Townsend was aware that there were limitations on his authority to settle but was not aware it was limited to $2,000. He felt it was probably $4,000 or $5,000. He informed Storto he would need verification of authority.

When recalled by the defense, Townsend also testified that the $20,000 figure included the advance payments. However, he admitted that he did not tell Storto that the $20,000 included the $4,700 advance payment. It must be noted that the insurer has not contended on appeal that there was no meeting of minds as to the amount.

Townsend also stated that the head man in the company's Geneva office on December 31, 1974, was Thomas Matthews. Matthews is still with the company as a liability claims consultant.

Storto testified that Townsend called him at 9 or 10 o'clock on December 31, 1974. He identified himself and said he was from the Country Mutual. He said he would like to discuss settlement of the case. He indicated that he had $20,000 of new money—that he was offering $20,000 over and above what had been paid on the case in order to settle it that day with drafts and releases. Storto said he would call his client and then advise him whether the offer would be accepted. Storto then called the plaintiff and informed him of the offer of $20,000 of new money over and above what he had been paid. Plaintiff deliberated a short time over the telephone and said he would take it. Shortly before lunch, Storto called Townsend and informed him that he and his client accepted the offer and would he please send the draft and releases. Townsend agreed. After this phone call, Storto noted on the file jacket of the case "settled for $20,000, plus med. pay." This was the only written memorandum he made of the conversation.

About 2 or 3 o'clock in the afternoon on the same day Townsend called back and said he had made a serious error. He did not really have the authority to settle the case for $20,000. Storto said that as far as he was concerned they already had a settlement agreement.

Storto stated that it was his policy never to communicate any alleged offer to a client unless it was an actual offer. He admitted that he was aware claims adjusters have limitations on their authority. Townsend identified himself as a senior claims representative. Storto had asked when he made the offer whether he had authority to make the offer since Storto did not want to call his client unless he had full authority. Townsend indicated that he did. He did not tell him he had to obtain verification or authority. While Storto was aware on December 31, 1974, that Townsend did not have such authority this was only after the last telephone call. All Storto knew as to Townsend's authority was what Townsend told him.

Plaintiff testified that he had a conversation with Storto about noon on that day. Further inquiry was objected to as repetitious of Storto's testimony. In an offer of proof counsel stated plaintiff would have testified that Storto informed him that an offer of $20,000 was made and that he instructed his attorney to accept the offer.

Plaintiff then read into evidence the following paragraph of the letter-memorandum previously referred to and used to refresh Townsend's memory:

"Mr. Townsend was called to the Geneva Regional Office on January 8 and a statement was taken from him and the matter discussed in full. Mr. Townsend was not even aware that he is limited to $2,000.00 authority on third-party claims. Mr. Townsend denied that he made a firm offer of $20,000.00. However, the way that he proposed the amount, it is my opinion that he did make an offer, especially since he requested the attorney to contact his clients and see whether it would be acceptable."

When the court asked if there was any objection the following colloquy ensued:

"MR. BROPHY: Only objection I have, Your Honor, is that it is a memo of someone who did not testify here.

THE COURT: It was kept in the ordinary course of business of the Defendant, was it not?

MR. BROPHY: I'm not objecting that it was not the original. I already agreed that secondary copies may be used. My objection is that it's a memorandum that has not been proved by the testimony of the parties that made it.

THE COURT: Is that the memo that you, Mr. Brophy on behalf of one or more of the Defendants under discovery rules submitted and gave to the attorney?

MR. BROPHY: It is pursuant to order of Court. Yes.

THE COURT: Objection overruled."

The trial court found based on all of the evidence presented,

including admitted documents and agreements that a $20,000 offer was made to the plaintiff on the morning of December 31, 1974, and accepted before noon the same day. The court entered judgment for the plaintiff for $20,000 plus statutory prejudgment interest.

The insurer contends that the letter-memorandum was improperly introduced because (1) it was hearsay; (2) it concerned an opinion; (3) there was no foundation to establish the competency of the person rendering the opinion or the basis for the opinion; (4) the author's authority and identity were not established; (5) the document was without relevance; and (6) it failed to qualify as a business record.

■■ The defendant did not raise these objections below. Accordingly they are waived. (*Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628; 2 Ill. L. & Prac. *Appeal & Error* §§213, 258 (1953).) The defendant expressly stated that its sole objection was that it was a memorandum of someone who did not testify at the trial, and it had not been proved by the testimony of the party who had made it. As the trial court noted, however, the document was one which had been possessed by the defendant and which it supplied pursuant to the court order. Furthermore, Townsend identified the initial on the letter as that of Thomas Matthews whose name also appears typed on the letter as its author. Thomas Matthews was at that time the head man in the Geneva regional office. Thomas Matthews was still an employee of the company at the time of the trial and could have been called to deny the authenticity of the document if, in fact, it was not his. Under the circumstances we agree with the trial court that the authorship of the document as a company document was sufficiently proven without the testimony of the actual author.

■■ It was not necessary for the document to qualify as a business record. That hearsay exception is relevant when a party wishes to use its own business record or that of a non-party. Here, however, the plaintiff introduced the statements of the insurer in evidence as admissions by the insurer unfavorable to it. It is firmly established that, as a general rule, any statement, written or not, made by a party or in his behalf which is inconsistent with his present position may be introduced into evidence against him. *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.

■■ The insurer's contention that the trial court erred in finding a contract is without merit. Townsend admitted he told his superior he had made an offer. The attorney stated the agent had made an offer and assured him he had authority to do so. Everyone agrees plaintiff through his attorney communicated his acceptance of the offer. All that is needed for the creation of a bilateral contract is an offer and acceptance. (*Moore v. Lewis* (1977), 51 Ill. App. 3d 388, 366 N.E.2d 594; *Village of Hoffman v. Meier* (1972), 4 Ill. App. 3d 949, 282 N.E.2d 245.) The court in light of the

evidence was clearly entitled to find one here. Insurer's contention that plaintiff suffered no prejudice and performed no act in reliance on the alleged offer is not relevant. Prejudice is not a necessary requirement of contract making.

■■ The insurer for the first time on appeal contends that the plaintiff failed to perform all conditions precedent in that he never provided the insurer with a release. While the insurer entered a general denial to plaintiff's allegation that he had performed all conditions precedent, it did not allege any facts to support this denial. Under Supreme Court Rule 133(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 133(c)), if an allegation of the performance of conditions precedent is denied, the facts must be alleged in connection with the denial showing wherein there was a failure to perform. If the defendant fails to do so, the denial is treated as an admission of performance of conditions precedent. *Casserly v. Pointer* (1963), 42 Ill. App. 2d 256, 192 N.E.2d 147 (abstract), *appeal denied* (1963), 28 Ill. 2d 625; *McCuan v. Claro* (1943), 319 Ill. App. 520, 49 N.E.2d 321 (abstract); *Moore v. Schoen* (1942), 313 Ill. App. 367, 40 N.E.2d 562; *Enloe v. American Family Protection, Inc.* (1937), 291 Ill. App. 623, 9 N.E.2d 728 (abstract); 2 Nichols, Illinois Civil Practice § 1229 (1979).

## IV

■■ Under Illinois law prejudgment interest can only be awarded on money received to the use of another and retained without the owner's knowledge, money lent for the use of another, liquidated accounts, money due on instruments in writing and money withheld by unreasonable and vexatious delay of payment. (Ill. Rev. Stat. 1979, ch. 74, par. 2.) No liquidated account was involved in this case. Likewise while an insurance contract is an instrument in writing (*Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.* (1977), 45 Ill. App. 3d 401, 359 N.E.2d 797), this suit was not on the insurance policy but on an oral settlement agreement. Finally the unreasonable delay provision is not applicable where the delay in payment is the result of litigation in the absence of fraud. *Hamilton v. American Gage & Machine Corp.* (1976), 35 Ill. App. 3d 845, 342 N.E.2d 758; *Kespohl v. Northern Trust Co.* (1970), 131 Ill. App. 2d 188, 266 N.E.2d 371.

In light of the foregoing the judgment in favor of the plaintiff and against defendant Townsend is reversed and judgment is entered for Townsend; the judgment in favor of the plaintiff and in favor of defendant Country Mutual is modified to delete the award of prejudgment interest and, as modified, is affirmed.

Reversed in part; affirmed as modified in part.

JOHNSON and JIGANTI, JJ., concur.