NATIONAL BOULEVARD BANK, Trustee, *et al.*, Plaintiffs-Appellants, *v.* BROKERAGE RESOURCES, INC., Defendant-Appellee.

First District (3rd Division)   No. 77-852

Opinion filed June 30, 1978.

Ruttenberg & Ruttenberg, of Chicago (David W. Ruttenberg, of counsel), for appellants.

Brundage & Garr, Ltd., of Chicago (Kenneth J. Brundage, of counsel), for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

This action for damages by plaintiffs, Martin and Lucie Niedelson, the beneficiaries of a land trust held by National Boulevard Bank, against defendant, their insurance broker, comes before this court for the second time. See *National Boulevard Bank v. Brokerage Resources, Inc.* (1976), 42 Ill. App. 3d 940, 943, 356 N.E.2d 988.

In December 1970, the Niedelsons decided to remodel a building they owned at 347 West Dickens, Chicago, Illinois, estimating that 1 year would be required to complete the remodeling. Plaintiffs acquired fire and extended coverage insurance for the remodeling through the defendant, which acted as their insurance broker. Although defendant placed $100,000 in fire insurance, it neglected to obtain a vacancy endorsement. The insurance went into effect on February 15, 1971, and remodeling began at that time.

Sixty days later, a fire occurred which damaged the pre-existing

structure and destroyed the remodeling work completed to that date. Almost 3 months after the fire, on July 7, 1971, the Niedelsons were formally notified that the insurance companies declined liability because the premises had been vacant for more than 60 days, in violation of the terms of the policies.

On July 21, 1971, plaintiffs filed this suit for declaratory judgment against both defendant and plaintiffs' insurers. Summary judgment was granted plaintiffs against the insurers on the ground that coverage was in full force at the time of the loss, regardless of the absence of a vacancy endorsement. After protracted negotiations, the insurers on July 16, 1973, paid plaintiffs the sum of $45,700 in settlement of the fire loss.

On December 30, 1974, the cause of action against defendant proceeded to a bench trial on plaintiffs' claim that defendant was negligent in failing to obtain a vacancy endorsement on the fire insurance policies with the result that the insurers denied liability and payment of the loss was delayed for more than 2 years. The circuit court judge entered judgment for defendant. On appeal, this court held that defendant was negligent in failing to obtain the endorsement and that this negligence resulted in the insurers' refusal to pay, which in turn necessitated the declaratory judgment action against the insurers. This court reversed and remanded the cause with directions that judgment be entered in favor of the Niedelsons, and that the damages proved and recognized by the trial judge be assessed. *National Boulevard Bank v. Brokerage Resources, Inc.* (1976), 42 Ill. App. 3d 940, 943, 356 N.E.2d 988.

Following remand, the trial court entered judgment in the amount of $12,172.71 plus costs. The Niedelsons contend that this award of damages did not adequately compensate them, is against the manifest weight of the evidence and that they proved total damages of $25,518.28. Plaintiffs claim they suffered two types of damage. They claimed $11,243.96 in fees charged by their attorneys for prosecuting the declaratory judgment action against the insurers. Plaintiffs introduced into evidence the "Settlement Distribution Sheet" from the fire loss, which indicated that $11,243.96 was deducted by their attorney for their fees from the $45,700 fire loss settlement. Both Niedelsons testified that all expenses indicated as deducted out of the settlement on the sheet were in fact paid. The settlement sheet was introduced into evidence without objection by defendant. Plaintiffs' attorney in the declaratory judgment action testified that attorneys' fees were $11,243.96 and that these fees were fair and reasonable for the services performed. Defendant did not cross-examine him.

Plaintiffs also claimed as damages the extra financing charges which they incurred because of the delay in receipt of the fire loss settlement. The original construction cost was estimated at $80,000. However,

because there was a mortgage on the property with a balance owing of $15,371.21, a total of $95,371.21 was required to complete the remodeling and pay the existing mortgage balance. To pay the $80,000 cost of construction, plaintiffs had $59,000 in cash, derived from a $25,000 interim construction loan and $34,000 in personal funds. To handle the remaining cost of construction ($21,000), plaintiffs obtained an agreement from the subcontractors to waive payment until the disbursement of a $63,000 mortgage commitment from North Federal Savings & Loan Association (North Federal) which loan was to be disbursed when the remodeling was completed. The Niedelsons planned to use the proceeds of this North Federal loan to pay off the existing mortgage ($15,371.21) and the interim construction loan ($25,000) leaving approximately $22,500 to pay the balance owing the subcontractors.

The financial picture changed dramatically after the fire. It is uncontradicted by defendant that $160,000 was required to pay for the fire damage and complete the remodeling, which amount included payment of the $15,371.21 balance on the existing mortgage. Mrs. Niedelson testified that after they were notified the insurers would not pay the loss, plaintiffs took various steps to raise additional funds.

First, another property owned by the plaintiffs was refinanced. An existing mortgage on that property with a loan balance of $43,050 bearing interest of 6% was paid off with the proceeds of a new $75,000 first mortgage loan. Plaintiffs incurred total costs of $2,474.96 in connection with the new loan. Thus, this refinancing provided the Niedelsons with net cash proceeds of $29,475 after certain costs were deducted and the previous mortgage balance of $43,050 paid off. The Niedelsons also incurred an added interest expense of $7,140.95 until the loss settlement was paid in July 1973, attributable to the difference in interest which was 6.7% on the $43,050 balance compared with 8⅜% on the new $75,000 loan.

Second, plaintiffs borrowed $30,000 from Peterson State Bank. They were charged $270 for this loan and interest of $1,644.96 up to July 1973.

Third, the proposed first mortgage loan at North Federal was increased by $9,500 resulting in additional interest charges to plaintiffs of $1,711.66 between April 1, 1972, the date that loan was disbursed, and the date the fire loss settlement was paid. In addition the plaintiffs were charged $285 by North Federal for increasing the amount of this loan.

Fourth, the Niedelsons extended their interim construction loan for 6 months, incurring additional interest expense of $747.09.

The total cost and interest charges the Niedelsons incurred in obtaining the added financing amounted to $14,274.62. And, the additional total net cash they raised to complete the construction was $68,975.

Two uncontradicted facts demonstrate that the Niedelsons are entitled to more than the sum of $12,171 in damages awarded by the trial judge.

First, although defendant does not expressly admit that damages for plaintiffs' legal expenses were properly awarded, this item of damage was not challenged by defendant in the trial court or in this appeal. Defendant presented no evidence which contradicted or impeached plaintiffs' evidence on attorneys' fees—the settlement sheet and the testimony of plaintiffs and their attorney—and this evidence supports plaintiffs' claim of $11,243.96 for attorneys' fees. There is therefore no basis in the record for awarding attorneys' fees in any other amount.

Second, as established by this court's opinion in the previous appeal, payment of the $45,700 fire loss settlement was delayed because of defendant's negligence. Thus, it cannot be disputed that, because of this negligence, the Niedelsons had to raise at least $45,700 in order to complete the remodeling. The $45,700 figure represents payment by the Niedelsons for previously completed remodeling work that was destroyed by the fire, and for fire damage to the existing structure. Consequently, in order to give substance to the previous appeal in this case, the financing charges attributable to plaintiffs' need to cover this $45,700 additional expense item is recoverable by plaintiffs.

The award of $12,171 being appealed from does not reflect both the legal costs and the added expenses for finance charges. Because the trial judge did not explain how he arrived at this figure and neither party at oral argument before this court was able to reconstruct the basis on which the trial court judge entered judgment in the amount of $12,171, the damage award in that amount cannot be sustained.

Defendant failed to introduce any evidence indicating that the expenses incurred by plaintiffs in obtaining increased financing were unnecessary or that comparable financing was available at a lower cost from other financial institutions. Defendant did not even contest the $160,000 figure which plaintiffs testified was the amount they needed to complete the remodeling and repair the fire damage. The evidence demonstrates that the Niedelsons were accurate in their estimate of the amount of increased financing they needed and obtained after the fire. The $160,000 figure included the $15,371.21 amount owing on the existing mortgage and therefore the total construction cost after the fire was approximately $145,000—$65,000 more than the original estimated cost of $80,000. As noted earlier, the total amount of net cash obtained by plaintiffs by added financing was $68,975 which approximated quite closely the $65,000 figure.

However, the amount of financing charges recoverable must be limited to those arising from the delay the Niedelsons suffered before they received the $45,700 settlement rather than the full amount of $14,274.62 they incurred in extra financing charges to raise the additional sum of $68,975. Nothing in the record indicates that plaintiffs would have

received a higher settlement had the insurers not denied liability immediately after the fire. Therefore we must assume that no more than $45,700 would have been paid to the Niedelsons by the insurers at the earlier date had defendant not been negligent. The negligence of the defendant delayed plaintiffs' receipt of at most $45,700. Any sum in excess of that amount required to complete the remodeling and pay for the fire damage would have had to have been financed by plaintiffs, and the charges relating to the financing of any amount in excess of $45,700 cannot be attributed to defendant's negligence. Accordingly, plaintiffs are not entitled to recover the charges they incurred in financing the difference between the $68,975 which they actually raised and the $45,700 of which they were deprived by defendant's negligence. Here the plaintiffs expended $14,274.62 to obtain net additional cash in the amount of $68,975. By our calculations, on a proportionate basis, they would have expended only $9,457.77 out of the total cost of $14,274.62 to obtain financing of $45,700. Only this portion of the total financing charges plaintiffs incurred can be added as damages to the $11,243.96 amount for attorneys' fees. The total damages defendant owes plaintiffs then are $20,701.73 ($11,243.96 plus $9,457.77) and the judgment of the circuit court is reversed and remanded with instructions to enter judgment in favor of plaintiffs in the amount of $20,701.73.

Judgment reversed and remanded with instructions.

JIGANTI, P. J., and McGILLICUDDY, J., concur.