Joseph LAZZARA, Plaintiff-Appellee,

v.

HOWARD A. ESSER, INC., Defendant and Third-Party Plaintiff-Appellant,

v.

AETNA CASUALTY & SURETY COMPANY OF ILLINOIS, INC. and Reliance Insurance Company of Illinois, Inc., Third-Party Defendants-Appellees.

No. 85–2649.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1986.

Decided Sept. 23, 1986.

Rehearings and Rehearing En Banc Denied Oct. 30, 1986.

Mitchell A. Orpett, Tribler & Marwedel, P.C., Chicago, Ill., for Howard A. Esser, Inc.

Richard J. O'Brien, Sidley & Austin, Chicago, Ill., for Lazzara.

Stephen R. Swofford, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for Aetna Casualty & Surety Co.

Kristine A. Karlin, Judge & Knight, Ltd., Park Ridge, Ill., for Reliance Ins. Co. of Illinois, Inc.

Before CUDAHY, POSNER, and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiff, Joseph Lazzara, directed his insurance broker, Howard A. Esser, Inc. ("Esser"), to acquire and maintain $1,000,000 in automobile insurance coverage for him. Esser obtained such coverage by acquiring two policies and it periodically renewed these policies. At one point, when it sought renewal of one of the policies, a policy with different liability limits than the original policy was issued, creating a "gap" of $150,000 in Lazzara's coverage. Lazzara was subsequently sued and had judgment entered against him when his daughter was involved in an automobile accident. Lazzara sued Esser for breach of fiduciary obligation and breach of contract. Esser in turn seeks recovery from the insurers that issued the two policies, Aetna Casualty & Surety Company of Illinois ("Aetna") and Reliance Insurance Company of Illinois ("Reliance"). The district court granted summary judgment for Lazzara and dismissed the complaints against the third-party defendants, 604 F.Supp. 1205. We affirm in part and reverse in part.

## I.

Howard A. Esser, Inc., an Illinois corporation with its principal place of business in Illinois, was engaged in the insurance brokerage business. Esser had agency agreements with several insurance companies, including Aetna and Reliance. These agreements authorized Esser to bind insurance coverage and entitled Esser to receive agency commissions for providing that insurance. For approximately twenty years prior to the time of the loss at issue, Esser had handled plaintiff's personal and business insurance needs by obtaining various insurance policies from various insurers.

In 1973 or 1974 Esser recommended that plaintiff increase his automobile coverage from $500,000 to $1,000,000. Plaintiff accepted Esser's recommendation and had Esser obtain the additional coverage. Esser was to renew coverage unless instructed otherwise. Plaintiff did not give Esser instructions as to how coverage was to be structured or with whom it was to be placed. Esser obtained the desired insurance by procuring primary coverage in the amount of $300,000 with Reliance and coverage in excess of $250,000 up to $1,000,000 from Aetna. The Aetna policy was renewed several times by Esser. On the date of the automobile accident the Aetna policy provided the same coverage as when it was first issued—one million dollars with minimum primary limits of $250,000 per person. The Reliance policy was also renewed several times by Esser. For the period of July 16, 1977, to January 16, 1978, Reliance issued through Esser a policy that insured plaintiff for split limits of $100,000 per person and $300,000 per occurrence. This policy, of course, differed from the policy initially purchased by Esser. The split-limit policy resulted in a $150,000 gap in coverage because it would cover only $100,000 per person and the Aetna policy did not provide protection for any amount below $250,000. Thus Lazzara was not protected for the full $1,000,000 he had requested. At no time prior to the accident did Esser advise the plaintiff of this gap in coverage or take steps to correct it. Esser renewed the split-limit Reliance policy several times. It was in effect at the time of the accident.

On August 13, 1979, an automobile listed on plaintiff's insurance policies struck and killed Anthony Bond. The automobile was being operated by Lazzara's daughter, Diana Lazzara. A lawsuit was filed by the estate of Anthony Bond and Donna Bond, the wife of the deceased, against plaintiff, Diana Lazzara and Reliance in a Florida court. After a trial judgment was entered against the defendants in the amount of $510,000. The first $250,000 of this judgment is recoverable from plaintiff and Diana, jointly and severally. Reliance has paid only $100,000 of this amount pursuant to its insurance policy, leaving $150,000 unpaid. Five thousand dollars of the judgment is recoverable from Diana alone. The

remaining $255,000 is recoverable from plaintiff, Diana and Aetna. Aetna has paid this amount in full.

In January 1983 plaintiff filed a complaint against Esser with respect to the unpaid $150,000. Esser was subsequently granted leave to file a third-party complaint against Aetna and Reliance. In February 1984 the district court granted the motion of the third-party defendants to dismiss the complaint against them. *Lazzara v. Esser*, No. 83 C 185 (Feb. 21, 1984). In October 1984 the district court denied the plaintiff's motion for summary judgment. *Lazzara v. Esser*, No. 83 C 185 (Oct. 30, 1984). After the case was transferred to a different judge both plaintiff and Esser filed motions to reconsider. In March 1985 the district court granted summary judgment for plaintiff. *Lazzara v. Esser*, No. 83 C 185 (March 27, 1985). Plaintiff then timely filed a motion to amend judgment seeking an award of prejudgment and postjudgment interest, costs and attorney's fees. The district court denied the motion with respect to attorney's fees and granted the motion with respect to prejudgment and postjudgment interest. *Lazzara v. Esser*, 622 F.Supp. 382 (N.Dist.Ill.1985). Esser appeals.

## II.

### A. Esser's Relationship to Lazzara

The district court correctly held that, as a matter of law, Esser acted as an insurance broker for the purposes of acquiring and maintaining automobile insurance for Lazzara, rather than as an agent for the insurer. Thus Esser was acting as Lazzara's agent and had a duty to act in good faith and with reasonable care, skill and diligence in compliance with Lazzara's instructions.

Although the question whether an insurance broker is the agent of the insured or the insurer is generally one of fact, when the evidence clearly shows that the broker is the agent of the insured, it becomes a matter of law. *See Davidson v. Comet Casualty Co.*, 89 Ill.App.3d 720, 723, 44 Ill.Dec. 943, 946, 412 N.E.2d 19, 22 (1980); *Ross v. Thomas*, 45 Ill.App.3d 705, 708, 4 Ill.Dec. 379, 381, 360 N.E.2d 126, 128 (1977); *Galiher v. Spates*, 129 Ill.App.2d 204, 207, 262 N.E.2d 626, 628 (1970).

■ The Illinois courts have defined an insurance broker as:

[O]ne who procures insurance and acts as middleman between the insured and the insurer, and solicits insurance business from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any selection by him, with the company selected by such broker.

*Galiher*, 129 Ill.App.2d at 206–07, 262 N.E.2d at 628; *see, e.g., City of Chicago v. Barnett*, 404 Ill. 136, 141–42, 88 N.E.2d 477, 481 (1949); *Davidson*, 89 Ill.App.3d at 722–23, 44 Ill.Dec. at 946, 412 N.E.2d at 22; *Browder v. Hanley Dawson Cadillac Co.*, 62 Ill.App.3d 623, 628–29, 20 Ill.Dec. 138, 142, 379 N.E.2d 1206, 1210 (1978). An insurance agent, on the other hand, has a fixed and permanent relationship to an insurance company that the agent represents and has certain duties and allegiances to that company. *See Roby v. Decatur Steel Erectors, Inc.*, 59 Ill.App.3d 720, 725, 17 Ill.Dec. 71, 75, 375 N.E.2d 1355, 1359 (1978); *Galiher*, 129 Ill.App.2d at 207, 262 N.E.2d at 628. Whether a person is an agent or a broker is determined by his or her acts. *See City of Chicago v. Barnett*, 404 Ill. at 141–42, 88 N.E.2d at 481 (1949); *Browder*, 62 Ill.App.3d at 629, 20 Ill.Dec. at 142, 379 N.E.2d at 1210; *Galiher*, 129 Ill. App.2d at 207, 262 N.E.2d at 628.

Some of the Illinois appellate courts have applied four criteria in determining whether an intermediary is an agent or a broker: (1) who called the intermediary into action; (2) who controls its actions; (3) who pays it;[1] and (4) whose interests does it repre-

---

**1.** As Judge Rovner noted, the factor of who pays the commission is probably not given much weight in practice. Illinois law permits insurers to pay brokers. Ill.Rev.Stat. ch. 73, § 1065.40; *see Browder*, 62 Ill.App.3d at 630–31, 20 Ill.Dec. at 143–44, 379 N.E.2d at 1212 (insurance broker

sent. *See Browder*, 62 Ill.App.3d at 629, 20 Ill.Dec. at 143, 379 N.E.2d at 1211; *Roby*, 59 Ill.App.3d at 725, 17 Ill.Dec. at 75, 375 N.E.2d at 1359.

 The evidence clearly shows that Esser was acting as a broker for Lazzara. Esser had served as Lazzara's broker for many years. The evidence establishes that Esser acted to protect Lazzara's interest and that Lazzara controlled its actions. Lazzara called Esser into action by requesting that Esser procure additional automobile insurance. Lazzara did not direct Esser to obtain the insurance coverage from a specified insurer, but rather relied on Esser's judgment. Nor was Esser obliged to obtain the coverage from any particular insurer. Further, by prior agreement, Esser was to maintain the insurance coverage until otherwise notified. Esser in fact did maintain the coverage for a period of time by renewing the policies. Esser's actions thus belie its claim that its agency relationship with Lazzara ended once it procured the initial policies.[2]

In light of such clear evidence showing that Esser was an agent for Lazzara for the purpose of procuring and maintaining automobile insurance, Esser's argument that its agency agreement with the insurance companies and the fact that the companies paid its commissions raise an issue of fact must fail. The agency agreement does not establish a "fixed or permanent" relationship between the insurers and Esser for the purpose of acquiring and maintaining insurance.[3] Esser was permitted to solicit from any person it desired, was not required to broker a particular amount of business annually and was not paid a salary. It had no allegiance to any insurance company. It was permitted to, and in fact did, enter into such agency agreements with other companies.

*Hartford Accident & Indemnity Co. v. Northwest National Bank*, 228 F.2d 391 (7th Cir.1955), upon which the defendant relies, is distinguishable. In *Hartford* we held that the party at issue was an agent for the insurer, rather than a broker, for the purpose of attributing knowledge of the agent to the insurer. The agent had entered into an agency agreement with the insurer that granted him the same powers as the agency agreement between Esser and Reliance. In *Hartford*, however, there is no indication that the agent had an arrangement with any insurance company other than Hartford. In fact, the name "Hartford Agency" appeared on his office door. Further, the agent did not have a long-standing arrangement with the insured under which he was to protect the insured's interests.

### B. Fiduciary Obligations

 Esser argues that even if it was Lazzara's agent there is a genuine issue of fact as to whether it breached its fiduciary

---

is a fiduciary of insured even though broker deducts commission from premiums). Further, most of the cases do not consider this factor in determining whether a person is a broker or an agent.

**2.** Esser argues that the agency relationship terminated once insurance was procured. *See Roby v. Decatur Steel Erectors, Inc.*, 59 Ill. App.3d 720, 17 Ill.Dec. 71, 375 N.E.2d 1355 (1978). *Roby*, however, only stands for the proposition that a broker may act only in accordance with the authority conferred upon him by his principal. *See id.* 17 Ill.Dec. at 75–76, 375 N.E.2d at 1359–60. In *Roby* the broker had not been authorized to pay a disputed claim to the insurer. In the case before us, however, Esser was instructed to maintain the agreed upon coverage. His authority thus extended beyond the mere procurement of a policy. Alternatively, Esser argues that the cases cited are

not dispositive of the question whether Esser was a broker when the gap was created or when the accident occurred, because they only address the broker relationship for the *procurement* of insurance. We are confident, however, that the standards articulated in these cases for determining whether one is a broker or an agent are fully applicable to situations other than the initial procurement of insurance.

**3.** Esser cites *Browder v. Hanley Dawson Cadillac Co.*, 62 Ill.App.3d 623, 20 Ill.Dec. 138, 379 N.E.2d 1206 (1978), for the proposition that it may still become an agent of the insurer even if it is determined to be an insurance broker. Although we do not quarrel with this general proposition, there is no evidence in this case that Esser became an agent of the insurers for purposes of procuring and maintaining the policies.

obligations. We agree with the district court that there is no genuine issue of fact. An insurance broker is liable for any loss sustained by the principal if the broker fails to procure insurance or does not follow instructions when obligated to do so (including instructions about maintaining a policy), or if the policy obtained is void or materially defective through the broker's fault, or if the principal suffers damage by reason of any mistake or act of omission or commission of the broker. *See Clear-Vu Packaging, Inc. v. National Union Fire Insurance Co.*, 105 Ill.App.3d 671, 675, 61 Ill.Dec. 212, 215, 434 N.E.2d 365, 368 (1982); *Omni Overseas Freighting Co. v. Cardell Insurance Agency*, 78 Ill.App.3d 639, 642–43, 33 Ill.Dec. 779, 782, 397 N.E.2d 112, 115 (1979); *Pittway Corp. v. American Motorists Insurance Co.*, 56 Ill. App.3d 338, 346–47, 13 Ill.Dec. 244, 250, 370 N.E.2d 1271, 1277 (1977); *Johnson v. Illini Mutual Insurance Co.*, 18 Ill.App.2d 211, 216, 151 N.E.2d 634, 637 (1958); *Johnston v. Otta*, 340 Ill.App. 270, 275–76, 91 N.E.2d 468, 471 (1950). The broker is obligated to act in good faith and with reasonable care, skill and diligence in transacting the business of the principal. *See Omni*, 78 Ill.App.3d at 643, 33 Ill.Dec. at 782, 397 N.E.2d at 115; *Pittway*, 56 Ill.App.3d at 346–47, 370 N.E.2d at 1271. Thus Esser breached its fiduciary duties to Lazzara because it failed to maintain the coverage that it had been instructed to maintain.

■ Esser argues that the plaintiff cannot prevail on summary judgment because there is no evidence that Esser ordered the reduced coverage or that uninterrupted coverage was available. These considerations, however, are irrelevant. At the very least Esser had a duty to inform Lazzara that the policies no longer provided the full amount of coverage that Lazzara had instructed Esser to obtain. We have held that

> [I]n the case of a broker who has agreed to seek renewal of a policy, it is immaterial whether the insurer would renew the policy. Inherent in the obligation to seek continuation of an insurance policy is the duty to notify the applicant if the insurer declines to continue [to insure] the risk, so the applicant "may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere." *Talbot v. Country Life Insurance Co.*, *supra*, 8 Ill.App.3d [1062,] 1065, 291 N.E.2d [830,] 832.

*Prince v. Royal Indemnity Co.*, 541 F.2d 646, 650 (7th Cir.1976), *cert. denied*, 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977); *see Wheaton National Bank v. Dudek*, 59 Ill.App.3d 970, 972, 17 Ill.Dec. 487, 489, 376 N.E.2d 633, 635 (1978). Similarly, the reasons why Reliance lowered its policy limits are irrelevant to the question whether Esser breached its fiduciary duties.

## C. Contractual Obligations

Esser also argues that Lazzara failed to prove the essential elements of a contract to procure and maintain insurance. Although we have little doubt that such elements were adequately proven, we find it unnecessary to address this issue because we have already held that summary judgment was correctly granted for Lazzara on his tort claim. It makes little difference whether we uphold the grant of summary judgment on the basis of breach of fiduciary duty or breach of contract. *See Prince*, 541 F.2d at 650.

## D. Policy Exclusions

■ Esser's next argument is that the district court erred by not permitting Esser to raise the exclusionary language of the Reliance policy to defeat plaintiff's claim. Damages for a broker's failure to procure or maintain insurance are determined by the terms of the policy that the broker failed to procure. *See Wheaton National Bank v. Dudek*, 59 Ill.App.3d 970, 973, 17 Ill.Dec. 487, 490, 376 N.E.2d 633, 636 (1978); *Gothberg v. Nemerovski*, 58 Ill.App.2d 372, 383–84, 208 N.E.2d 12, 19 (1965); *Schmidt v. Sinclair*, 342 Ill.App. 484, 97 N.E.2d 129 (1951); *see also Stinson v. Cravens, Dargan & Co.*, 579 S.W.2d 298, 300 (Tex.Civ.App.1979); *Pacific Dredging Co. v. Hurley*, 65 Wash.2d 394, 400–01, 397

P.2d 819, 822–23 (1964). Hence Lazzara's damages should be calculated by reference to the hypothetical Reliance policy, which would have provided protection up to $250,000 (the amount that would have eliminated a gap in coverage). Reliance, however, has paid $100,000 in accordance with the Bond judgment under the policy that was actually in force, thus effectively conceding its liability under the terms of the policy. The issue before us then is whether Esser should be allowed to argue the policy defenses, despite Reliance's acquiescence in its liability under the terms of the policy.

We need not resolve this issue because the policy clearly covers the accident. Under the policy an insured is defined as follows:

(a) with respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (2) above;

(b) with respect to a non-owned automobile,

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b)(1) or (2) above.

Esser argues that the policy does not provide coverage because the automobile was assertedly a non-owned automobile and Diana was not a relative[4] of the plaintiff within the terms of the policy. Esser bases this argument on Lazzara's deposition, in which he states that he promised to give her the car if she required it in establishing residency or if she went to school and required it. Lazzara also says that he may have signed title over to her (although without transferring it to her). The policy, however, defines "owned automobile" as "a private passenger ... automobile described in this policy for which a specific premium charge indicates that coverage is afforded." The automobile involved in the accident was separately listed on the policy then in effect and a specific premium charge was made for it. Because the automobile was an "owned automobile" within the terms of the policy, any person (not just a relative) using that automobile with Lazzara's permission was covered under the policy.[5] Since the accident was clearly covered under the terms of the policy, there were no policy defenses which Esser could effectively argue and its effort to escape liability on this basis is unavailing.

### E. Damages

Esser also argues that the plaintiff had failed to prove by competent evidence that he was damaged. First, Esser argues that, because the plaintiff may have assigned his rights against Esser to the attorneys for the Bonds, the Bonds or their attorneys may in fact be the real parties in interest under Federal Rule of Civil Procedure 17(a). Second, Esser argues that an uncertified photocopy of only the first page of the final judgment order in the *Bond* case is inadmissible under Rule 902 of the Federal Rules of Evidence and therefore the plaintiff has not produced any proof of damages. Third, Esser argues that because the plaintiff has never been com-

---

4. The policy defines "relative" as "a relative of the named insured who is a resident of the same household."

5. Why Lazzara should have been found liable for an accident involving his daughter under the circumstances shown here is not clear, but this question is not before us.

pelled to pay the $150,000 judgment to the Bonds and because another defendant in the *Bond* action may be compelled to pay in the end, the plaintiff has failed to prove damages.

■ These arguments were not properly raised before the district court and hence we will not address their merits. A ground for reversal cannot be presented for the first time on appeal unless it involves jurisdiction or there are exceptional circumstances requiring as a matter of justice that the rule be set aside. *See Zbaraz v. Hartigan*, 763 F.2d 1532, 1544 (7th Cir. 1985). The district court is not obligated to conduct on its own a search for any issues that may lurk in the pleadings, even if ignored by counsel. *See Erff v. MarkHon Industries*, 781 F.2d 613, 618–19 (7th Cir. 1986). Esser has not argued that exceptional circumstances are present nor do we perceive any.

■ As for the first issue, we do not find in the record any reference to an argument under Rule 17(a), nor has Esser directed us to any. Esser discovered the purported factual bases of a Rule 17(a) argument when it took plaintiff's deposition on May 18, 1984. Yet Esser did not raise this point in its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (July 16, 1984) or by any other procedure. Esser has thereby waived its right to present this argument on appeal.

■ Esser's second argument is that the uncertified photocopy of only the first page of the *Bond* judgment was inadmissible. Esser's answer did note that the photocopy permitted no conclusion about Lazzara's liability and demanded production of the complete judgment order. Similarly, Esser's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (July 16, 1984) noted that the final judgment order attached to the complaint was insufficient to establish Lazzara's liability for the judgment. However, neither of these submissions nor any other submission by Esser in the district court argues that the photocopy was inadmissible under

Rule 902 of the Federal Rules of Evidence. The district court did have a complete copy of the judgment order before it when it ruled on the motions for summary judgment. A complete copy was attached to Aetna's Motion to Dismiss (October 19, 1983). The complete order states clearly that the first $250,000 of the $510,000 judgment is to be recovered from Joseph Lazzara and Diana Lazzara, jointly and severally, but without prejudice to any rights they may have against Reliance. The judgment also notes that $100,000 was received from Reliance in partial satisfaction of the judgment against the Lazzaras, leaving them liable to the Bonds for $150,000.

■ Esser's third argument seems to be that even if we examine the complete judgment order, it does not establish damages because Lazzara has not been compelled to pay and may never be compelled to pay. Esser argues that Reliance might be required to pay all or part of the $150,000 to Lazzara (in which case, of course, Lazzara would be out of pocket). Esser refers to the fact that the *Bond* judgment expressly states that it is without prejudice to the parties' right to determine whether Reliance is responsible for an amount greater than $100,000. Esser did recite this fact in the fact section of its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. Esser, however, did not argue to the district court that this was a reason not to grant summary judgment to Lazzara.

Another possibility exists. Lazzara might never be compelled to pay the judgment, either because the Bonds never execute the judgment or execute it only against Diana. This argument, however, was not raised in the district court. Esser's statements in his Answer and in his Memorandum in Opposition to Plaintiff's Motion for Summary Judgment were insufficient to raise this issue. Further, subsequent statements made by Esser on the record before the district court seem to concede explicitly that proof of damages is not an issue. The Joint Status Report (No-

vember 7, 1984), signed by attorneys for both parties, states:

Plaintiff sustained personal liability in the amount of the $150,000.00 "gap" when a loss occurred within the coverages of the primary and umbrella policies, and a judgment was entered against plaintiff on May 5, 1982 in the amount of $510,000.00 in an action brought in the Twentieth Judicial Circuit for Collier County Florida under the caption *Bond v. Lazzara*, No. 80–1028–CA–01–TBC.

Esser's Memorandum in Opposition to Motion to Amend Judgment (May 8, 1985) states:

On May 5, 1982, a judgment was entered against Lazzara in the amount of $510,000 in the case of *Bond v. Lazzara*, in Collier County, Florida *("Bond")* *(see Complaint*, Count I, par. 9). Due to the coverage gap, $150,000 of that judgment was not paid by Lazzara's insurers, leaving Lazzara personally exposed.

Thus we believe that Esser failed to present its damages arguments to the district court and thereby waived its right to present these issues on appeal.[6]

### F. Comparative Negligence

■ Esser also argues that the district court erred in granting summary judgment without applying the doctrine of comparative negligence. This is yet another argument that Esser has waived by failing to press it before the district court. Although Esser's answer does state "that the alleged damage to plaintiff was caused in whole or in part by his own negligence and not by the negligence of this defendant," Esser failed to raise the issue of comparative negligence in its Memorandum in Opposition to Motion for Summary Judgment or Memorandum in Opposition to the Motion for Reconsideration. A contention included in an answer, but not pressed before the district court, may not be presented on appeal as a ground for reversal. *See King v. Stevenson*, 445 F.2d 565, 571 (7th Cir.

1971); *see also Heiar v. Crawford County*, 746 F.2d 1190, 1197 (7th Cir.1984) (a ground not "pressed" in the district court is treated as abandoned), *cert. denied*, —— U.S. ——, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). A trial judge may properly depend upon counsel to apprise her of the issues for decision. The judge is not obligated to search for other issues that "may lurk in the pleadings." *Erff v. MarkHon Industries*, 781 F.2d 613, 618 (7th Cir.1986) (plaintiff failed to present argument in "a lawyer-like fashion" and did not disclose argument at pre-trial conference); *see Libertyville Datsun Sales v. Nissan Motor Corp.*, 776 F.2d 735, 736 (7th Cir.1985); *Desert Palace, Inc. v. Salisbury*, 401 F.2d 320, 324 (7th Cir.1968). Thus Esser has waived the issue of comparative negligence by failing to press the issue in the district court.

### G. Prejudgment Interest

■ The district court awarded Lazzara prejudgment interest under Illinois Revenue Statute Chapter 17, § 6402 (1983), which provides:

Creditors shall be allowed to receive [interest] at the rate of five (5) per centum per annum for all moneys after they became due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment.

The district court did not specify which of the statutory bases it relied upon. Esser argues that none of the statutory criteria are met. Lazzara contends that the award of prejudgment interest was proper either because Esser's refusal to pay had been unreasonable and vexatious, or because

---

**6.** Should it turn out that Lazzara, after collecting from Esser, never pays the $150,000 Bond judgment, Esser would presumably have some remedy in equity, perhaps the imposition of a constructive trust to prevent unjust enrichment.

such an award is proper apart from the statute as a measure of Esser's liability for breaching its fiduciary duties to the plaintiff.[7]

■ Esser's refusal to pay has not been unreasonable and vexatious. The unreasonable delay provision in the statute is not applicable in the absence of fraud when the delay in payment is the result of litigation. *See Kalalinick v. Knoll*, 97 Ill.App.3d 660, 669, 52 Ill.Dec. 802, 809, 422 N.E.2d 1011, 1018 (1981). There is no evidence of fraud. Further, in addressing the issue of attorney's fees, the district court held that Esser's delay in settling Lazzara's claim did not amount to an unreasonable or vexatious delay. Memorandum Opinion and Order (July 16, 1985). The district court found that "a genuine legal issue was presented regarding whether Esser was a broker or an agent." *Id.*

Lazzara's fallback position is that the award of prejudgment interest is supportable as an item of damage proximately caused by Esser's breach of duty. Plaintiff argues that because Esser's conduct caused plaintiff to sustain liability in the amount of the gap, plus liability for interest on this principal amount at the annual rate of twelve percent under the Florida statute, the damage award should cover both elements. Under Illinois law, the general rule is that prejudgment interest can be awarded only when provided by statute or agreement of the parties. *See U.C. Castings Co. v. Knight*, 754 F.2d 1363, 1376 (7th Cir.1985). However, an award in the amount of the interest Lazzara is liable for on the Bond judgment may be supportable not as an award of prejudgment interest, but as part of the damages that plaintiff suffered as a result of Esser's breach of duty. We may, of course, affirm the district court's award on any ground.

In *In re Air Crash Disaster Near Chicago*, 644 F.2d 633 (7th Cir.1981), we upheld an award of prejudgment interest in a wrongful death case. Although prejudgment interest per se was not permissible on the facts, the amount of the prejudgment interest award was a proper element of damages under the wrongful death statute. The statute required "fair and just compensation" and this was interpreted as requiring damages that would compensate for the present value of plaintiff's pecuniary loss as of the date of trial. Because the jury was instructed to calculate the present value of the loss as of the date of death, the award of prejudgment interest merely allowed a proper adjustment to arrive at the present value as of the date of trial. Thus, in the case before us, we can affirm the award of prejudgment interest if it, in effect, merely serves to fully compensate plaintiff for the damages recognized under Illinois law.

■ Esser is liable, under the Illinois cases, for "any loss" sustained by Lazzara. *See supra* at 266. We believe that this includes the interest that he is liable for under the Bond judgment. In *National Boulevard Bank v. Brokerage Resources, Inc.*, 62 Ill.App.3d 159, 19 Ill.Dec. 342, 378 N.E.2d 1217 (1978), the plaintiffs' insurance broker acquired fire insurance for a building that they were remodeling. The broker, however, failed to obtain a vacancy endorsement and the insurance company denied liability after a fire struck the building because the premises had been vacant for more than 60 days, in violation of the policy terms. Although the insurers eventually settled with the plaintiffs, the plaintiffs in the interim had to pay substantial finance charges in order to borrow the money necessary to continue remodeling. The court held that these finance charges

---

7. The award is not justified as money due on an instrument of writing because although an insurance contract is an instrument of writing, *see Kalalinick v. Knoll*, 97 Ill.App.3d 660, 52 Ill.Dec. 802, 442 N.E.2d 1011, 1018 (1981), Esser's liability in this suit does not derive from the insurance policy but rather from an oral agreement to procure and maintain insurance. *See Conti-* nental Casualty Co. v. American Fidelity & Casualty Co., 275 F.2d 381 (7th Cir.1960); *Lumbermen's Mutual Ins. Co. v. Slide Rule & Scale Eng. Co.*, 177 F.2d 305, 311–12 (7th Cir.1949); *Kalalinick*, 97 Ill.App.3d 660, 5 Ill.Dec. 802, 442 N.E.2d 1011 (no prejudgment interest in suit on oral settlement agreement with insurance agent).

were compensable as damages because payment of the fire loss settlement was delayed as a result of defendant's negligence.

Similarly, payment of the $150,000 Bond judgment was delayed because of Esser's failure to procure insurance that would have covered that loss. As a result, Lazzara is liable for interest on the Bond judgment under the Florida statute. Esser has not argued that plaintiff could have in some way mitigated this aspect of the damages. Therefore, the district court could have properly awarded plaintiff damages in the amount of interest on the Bond judgment for which he is liable under the Florida statute. The district court, however, erroneously awarded the amount that Lazzara would be entitled to in prejudgment interest under the Illinois statute if that statute applied. Lazzara did not cross-appeal this award, and therefore is not entitled to any greater amount than awarded by the district court. He is entitled to the amount awarded by the district court to the extent that it is equal to or less than the interest that he is liable for on the Bond judgment as of the date of judgment. We remand to the district court to determine whether, under the analysis we have set forth, Lazzara is entitled to all of the interest awarded by the district court, or only some portion of it.

### III.

Esser filed a third-party complaint against Aetna and Reliance. Count I of Esser's complaint states that the written agreement between Aetna and Esser obligates Aetna to indemnify Esser for any judgment against it. In Counts II and III Esser seeks implied indemnity and contribution from Aetna on the ground that Aetna breached duties it owed to Lazzara. Esser claims that Aetna was negligent in issuing the policy because it knew or should have known of Lazzara's split limits under his Reliance policy and should have investigated Lazzara's insurance needs. Count IV alleges that Esser was acting pursuant to its authority as agent for Aet-

na and therefore should be indemnified by Aetna for any liability to Lazzara. Count V alleges that the written agreement between Reliance and Esser obligates Reliance to indemnify Esser for any judgment against it. Counts VI and VII seek implied indemnity and contribution from Reliance on the ground that Reliance breached duties it owed to Lazzara. Esser claims that Reliance was negligent in reducing Lazzara's policy limits when it knew or should have known that he had umbrella coverage that required $250,000 per person in coverage. Count VIII alleges that Esser was acting pursuant to its authority as agent for Aetna and therefore should be indemnified by Aetna for any liability to Lazzara. Count IX alleges that Esser, as agent for Reliance, is entitled to reformation of the insurance policy.

Judge Kocoras granted the third-party defendants' motion to dismiss on all counts. Judge Rovner granted Esser's motion for reconsideration as to Counts IV, VIII and IX because of the inconsistency between Judge Kocoras' rulings on those counts and his ruling on Lazzara's motion for summary judgment on the subject of Esser's agency. She denied Esser's motion for reconsideration on Counts I, II, III, V, VI and VII. On Counts IV, VIII, and IX Judge Rovner considered the motions to dismiss as motions for summary judgment. She granted summary judgment for the insurance companies on these counts because she had already determined, in addressing Lazzara's motion for summary judgment, that Esser was Lazzara's broker (and not the agent of the insurance companies) for the purpose of procuring insurance.

Esser now complains that it did not receive notice that Judge Rovner was going to treat the motion to dismiss as a motion for summary judgment, as mandated by Rule 12(b)(7) of the Federal Rules of Civil Procedure. Rule 12(b)(7) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not exclud-

ed by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

■ Although Esser may not have received proper notice that the district court was treating the motion to dismiss as a motion for summary judgment,[8] any error was harmless on the facts of this case. The only issue outside of the pleadings considered by the district court was whether Esser was acting as a broker or an agent for the purpose of reviewing Lazzara's policy at the time the gap in coverage occurred. But that very issue was addressed by Esser in arguing against summary judgment for Lazzara. Thus Esser had an opportunity to submit relevant material outside of the pleadings on that issue. Esser was not prejudiced and therefore any error was harmless. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280–81 (7th Cir.1986); *Kaestel v. Lockhart*, 746 F.2d 1323, 1324 (8th Cir.1984); *Coldwell Banker & Co. v. Karlock*, 686 F.2d 596, 605 (7th Cir.1982); *Chicago-Midwest Meat Association v. City of Evanston*, 589 F.2d 278, 282 (7th Cir.1978), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). Further, Esser offers no hint of what additional materials it would have produced had it been given the appropriate notice.

Esser argues that the district court's consideration of the motion as one for summary judgment is based on the erroneous assumption that, because Esser was found to be a broker for plaintiff for purposes of procuring insurance, it could never be considered an agent of Reliance or Aetna for any other purpose (such as the purpose of reviewing Lazzara's policy). Esser argues that the district court's ruling that Esser was Lazzara's broker for the purpose of procuring insurance is irrelevant to the determination of Esser's role when the gap was created.

We agree with Esser that a determination that Esser was an agent or a broker at one point in time (or for one purpose) may not be determinative of whether Esser was an agent or a broker at another time (or for another purpose). However, the agent/broker question at issue in the plaintiff's case is indistinguishable from the agent/broker question in the third-party action. In both actions the relevant time is the time when the gap appeared. In both actions the relevant issue is whether, at that time, Esser was a broker or an agent for the purpose of procuring the renewal of the policies.[9] Therefore we affirm the district court's grant of summary judgment on Counts IV, VIII and IX.

■ Counts I and V seek indemnity from Aetna and Reliance, respectively, on the basis of indemnification provisions in Esser's agency agreements with the two insurance companies. Both agency agreements provide for indemnity only if the agent did not cause, contribute to or compound the error.[10] Judge Kocoras dis-

---

8. Esser, however, should have been aware that such a conversion was possible, because both Reliance's and Aetna's memoranda in opposition to the motion to reconsider invited the court to convert their motions to dismiss to motions for summary judgment if necessary.

9. Esser seems to assume that because the district court states at some points in the opinion that Esser was "a broker for Lazzara for the purpose of procuring insurance," it is only referring to the initial procurement of insurance and not the renewal of policies. Clearly, however, the district court found that Esser was a broker for the purpose of renewing policies at the time the gap occurred. *See* District Court Opinion (March 27, 1985) at 11 n. 3, 12.

10. The agreement between Esser and Aetna, as set forth in the pleadings, provided:

The Company will hold the agent harmless of any liability, including costs of defense, caused by Company error in the preparation, processing or billing of any policy, provided the agent did not cause, contribute to or compound such error and provided the agent shall have given the Company prompt notice of any claim asserted against the agent and provided further that the Company is permitted to direct the investigation, settlement and defense of any such claim.

The agreement between Esser and Reliance provides:

A. The Company shall indemnify and hold the Agent harmless:

missed these counts for failure to state a claim because the narrowly drawn indemnification clauses do not encompass a situation in which an independent insurance broker's liability is predicated on the broker's own negligent failure to procure for its customer what it had promised. In considering Count V he also noted that the complaint failed to allege that Esser was free from fault, a point that is equally applicable to Count I.

Counts I and V seek indemnity "if any liability should be found against Esser in the claim brought by the plaintiff." Plaintiff's claim against Esser alleged that Esser was negligent and breached his contract with Lazzara by failing to obtain the amount of insurance requested by Lazzara. We think that the district court quite reasonably concluded that if Esser was found to have breached its duties to Lazzara by failing to procure the correct amount of insurance, it would necessarily have caused or contributed to the error.

Esser argues, however, that the issue whether its negligence caused or contributed to the error could not be decided solely on the basis of the pleadings. Ultimately we need not resolve this issue. We have held that Esser breached its fiduciary duties to plaintiff because, at the very least, Esser had a duty to inform Lazzara of the gap in coverage. Thus Esser caused or contributed to the error. Even if the district court should have granted summary judgment on Counts I and V, rather than dismissing for failure to state a claim, no reversible error has resulted. We need not remand Counts I and V for consideration of motions of summary judgment with respect to these counts. We have affirmed

a district court's dismissal of a claim when the district court should have granted summary judgment rather than dismissing the complaint. *See Chicago-Midwest Meat Association v. City of Evanston*, 589 F.2d 278 (7th Cir.1978), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). Although the parties must, of course, receive notice that a motion to dismiss will be treated as a motion for summary judgment, and have a reasonable opportunity to establish the existence of material controverted facts, the failure to do so does not necessarily mandate reversal. *See Malak v. Association Physicians, Inc.*, 784 F.2d 277, 280–81 (7th Cir.1986); *Coldwell Banker & Co. v. Karlock*, 686 F.2d 596, 605 (7th Cir.1982), *Chicago-Midwest Meat*, 589 F.2d at 282. We think that it does not mandate reversal here, when we have held that Esser was negligent in a manner that necessarily caused or contributed to the error. Esser has had full opportunity to present its case on the only arguable factual issue presented. Hence we may affirm on Counts I and V.

■ In Count II Esser seeks implied indemnity from Aetna on the ground that Aetna was negligent in issuing the policy because it knew or should have known of Lazzara's split limits under his Reliance policy. In Count VI Esser seeks implied indemnity from Reliance on the ground that Reliance was negligent in reducing Lazzara's policy limits. The Illinois Supreme Court has recently held that, following the adoption of the Illinois Contribution Act, implied indemnity no longer remains a viable theory for shifting the costs of tortious conduct among jointly liable tort-

1. Against any claims, liabilities or costs of defense which the Agent may become obligated to pay as a result of loss to policyholders caused directly by error of the Company in the processing of Direct Billed policies under its Agreement except to the extent that the Agent has caused, contributed to or compounded such error; and

2. against any and all civil liability for damages and expenses, including the cost of defense that the Agent may be obligated to pay as a direct result of the failure of the Company to comply with the requirements of

the Fair Credit Reporting Act (Public Law 91–508) except to the extent that such failure to comply has been caused or contributed to by any willful or intentional act or omission of the Agent.

B. The Company's obligation to indemnify shall be conditioned upon prompt notification by the Agent to the Company of any claim made or legal action brought against the agent which is subject to indemnification as set forth above and the Company shall have the right to direct the investigation, settlement and defense of any such claim or action.

feasors. *See Allison v. Shell Oil Company*, 113 Ill.2d 26, 99 Ill.Dec. 115, 495 N.E.2d 496 (1986). Hence, active-passive indemnity is not an available alternative to contribution even when there exists a pre-tort relationship and a "quantitative" difference in the fault attributable to the tortfeasors.[11] *Id.* Thus Counts II and VI must be dismissed.

Counts III and VII present claims for contribution on the same grounds as Counts II and VI. Esser argues that the district court's dismissal of Count III was erroneous because if a "jury were to determine that Aetna knew of the 'insufficient' Reliance primary policy and negligently issued coverage reflecting underlying limits of $250,000, in spite of that knowledge, Aetna could very well be held responsible for all or part of the alleged gap." Defendant's Brief at 45–46.

■■■ We believe, however, that under Illinois law Aetna would not be negligent in issuing coverage reflecting underlying limits of $250,000, even if Aetna knew that the primary policy provided insufficient coverage. An insurance company has the duty to exercise good faith and reasonable skill, care and diligence in writing and issuing policies. *See Central States Joint Board v. Continental Assurance Co.*, 117 Ill.App.3d 600, 605, 73 Ill.Dec. 107, 111, 453 N.E.2d 932, 936 (1983); *Cleary v. Country Mutual Insurance Co.*, 63 Ill.App.3d 637, 638, 20 Ill.Dec. 547, 548, 380 N.E.2d 525, 526 (1978). An insurer, however, does not have the duty of reviewing the adequacy of an insured's coverage, even when it knows of facts that indicate that the coverage is inadequate. *See Cleary*, 63 Ill.App.3d 637, 20 Ill.Dec. 547, 380 N.E.2d 525; *see also Central States*, 117 Ill.App.3d 600, 73 Ill. Dec. 107, 453 N.E.2d 932.[12] The insured, not the insurance company, best knows his or her need for insurance. *Cleary*, 63 Ill. App.3d at 638, 20 Ill.Dec. at 548, 380 N.E.2d at 526. Further, insured parties have the burden of knowing the contents of their insurance policies and of bringing alleged discrepancies to the attention of the insurer. *See Central States*, 117 Ill. App.3d at 607, 73 Ill.Dec. at 113, 453 N.E.2d at 937; *Cleary*, 63 Ill.App.3d at 638, 20 Ill.Dec. at 548, 380 N.E.2d at 526. Count III was therefore properly dismissed.

■■■ Count VII, Esser's claim for contribution from Reliance, alleges that Reliance breached various duties that it owed to Lazzara.[13] Esser argues that it ade-

---

**11.** The court reserved the question of the viability of implied indemnity in cases involving a defective product or vicarious liability.

**12.** In *Cleary* the plaintiff alleged that the insurance company was negligent in breaching its duty to counsel her as to the inadequacy of her insurance coverage. The plaintiff claimed that her homeowner's coverage should have put the insurance company on notice that she owned residential and farm property (and presumably required greater automobile insurance coverage to protect this property). The court rejected the argument that the insurer had a "continuous duty to advise and counsel its insured as to the need or advisability of increased insurance coverage." 63 Ill.App.3d at 638, 20 Ill.Dec. at 548, 380 N.E.2d at 526.

In *Central States* the plaintiff requested that the insurance company change its pension funding insurance contract to eliminate a cash lump-sum payment provision. Plaintiff alleged that the defendant should have disclosed that the policy also contained an annuity purchase provision that had the same deleterious effect as the cash payment provision—both provisions

caused a cash drain problem. The court rejected this claim and held for the defendant.

**13.** Count VII adopts the allegations found in Count VI of the Complaint, which allege that Reliance:

a) negligently and improperly reduced the limits of plaintiff's insurance coverage so as to create a "gap" in plaintiff's coverage between its policy and the umbrella coverage issued to plaintiff by Aetna Casualty & Surety Company of Illinois;

b) negligently and improperly renewed said improper reduction of coverage;

c) negligently issued and renewed coverage to plaintiff for specified losses up to $100,000.00 per person, when it knew or should have known that plaintiff had umbrella coverage which required $250,000.00 per person in underlying primary liability coverage;

d) negligently failed to make proper inquiry or conduct proper investigation into plaintiff's insurance coverage, needs and history prior to issuing policy # AK 9 94 51 20;

e) negligently failed to deal promptly with plaintiff;

quately stated a claim by alleging that Reliance negligently failed to provide Lazzara the coverage requested and failed to provide Lazzara appropriate insurance coverage in the face of actual or constructive knowledge of his specific circumstances. *See* Appellants's Brief at 46–47. We have already concluded that an insurer does not have the duty of reviewing the adequacy of an insured's coverage, even when it knows of facts that indicate that the coverage is inadequate. Thus Esser's latter allegation fails to state a claim. We believe, however, that the former allegation (that Reliance did not provide the coverage requested) does state a claim and should not have been dismissed by the district court at this stage in the proceedings. An insurance company bears the duty to exercise good faith and reasonable skill, care and diligence in writing and issuing policies for its insured. *See Germann v. Pekow*, 531 F.Supp. 355, 356 (N.D.Ill.1981); *Cleary*, 63 Ill.App.3d at 638, 20 Ill.Dec. at 548, 380 N.E.2d at 526. It seems that the insurance company's duties include the duty to issue policies that comport with the coverage requested. *See Central States*, 117 Ill. App.3d at 605, 73 Ill.Dec. at 111, 453 N.E.2d at 935; *Cleary*, 63 Ill.App.3d at 638, 20 Ill.Dec. at 548, 380 N.E.2d at 526. Reliance itself admits:

> The only conceivable manner in which it could arguably be said that Reliance is at fault would be if either Lazzara or Esser

f) negligently made or caused to be made numerous errors in issuing and processing policy # AK 6 38 74 22, so as to cause the improper reduction of plaintiff's coverage to be written into its replacement policy # AK 9 94 51 20;

g) negligently and improperly refused to renew plaintiff's "thrift" policy of insurance, # AK 9 24 37 85, thereby causing plaintiff's coverage to be improperly reduced and a "gap" in his coverage to result;

h) negligently and wrongfully refused to pay the loss described in plaintiff's complaint so that a "gap" was created;

i) was otherwise negligent in issuing, processing, maintaining or renewing policy # AD 9 24 37 85, policy # AK 9 24 37 85 and/or policy # AK 9 94 51 20, which, in whole or in part, caused a "gap" in plaintiff's insurance coverage where, absent such negligence by Reliance, no such "gap" would have existed.

specifically requested certain coverage which Reliance refused or failed to provide.[14]

Brief of Third Party Defendant, Reliance at 25.

 Reliance argues that Lazzara had the burden of knowing the contents of his insurance policy and bringing alleged discrepancies to Reliance's attention. Under Illinois law, an insured has the burden of knowing the contents of the insurance policy and has an affirmative duty to bring any discrepancies in the policy to the attention of the insurer.[15] *See Dobosz v. State Farm Fire & Casualty*, 120 Ill.App.3d 674, 682, 76 Ill.Dec. 211, 216, 458 N.E.2d 611, 616 (1983); *Central States*, 117 Ill.App.3d at 607, 73 Ill.Dec. at 113, 453 N.E.2d at 937; *Florsheim v. Travelers Indemnity Co.*, 75 Ill.App.3d 298, 307, 30 Ill.Dec. 876, 884, 393 N.E.2d 1223, 1231 (1979); *Cleary*, 63 Ill. App.3d at 638, 20 Ill.Dec. at 548, 380 N.E.2d at 526. The insured is charged with notice of the contents of the policy even when the insured fails to read the policy. *See Dobosz*, 120 Ill.App.3d at 682, 76 Ill.Dec. at 216, 458 N.E.2d at 616; *Foster v. Crum & Forster Insurance Cos.*, 36 Ill.App.3d 595, 598, 345 N.E.2d 49, 51 (1976) ("Although we recognize ... that laymen may not, as a common practice, read insurance policies, we cannot excuse plaintiffs from their burden of knowing the contents of insurance policies and bringing alleged

Third Party Complaint, Count VI, ¶ 14.

**14.** Reliance argues that such a failure has not, and cannot, be alleged by Esser. We believe, however, that the complaint, especially ¶ 14(f), can be read as alleging such a breach of duty.

**15.** Under Illinois law, insured-agent cases are treated differently from insurer-insured cases. In an insured-agent case, in which the insured seeks to prove that the agent negligently performed its duty to procure a specified party, the insured's failure to read the policy and point out errors may be evidence of contributory negligence, but is never contributory negligence as a matter of law. *See Floral Consultants, Ltd. v. Hanover Insurance Co.*, 128 Ill.App.3d 173, 176, 83 Ill.Dec. 401, 403, 470 N.E.2d 527, 529 (1984); *Black v. Illinois Fair Plan Assoc.*, 87 Ill.App.3d 1106, 1110–11, 42 Ill.Dec. 934, 938, 409 N.E.2d 549, 553 (1980).

discrepancies to the attention of the company.").

Reliance thus may be able to defeat Esser's claim by showing that Lazzara could not recover directly from Reliance because he should have known of any discrepancy in the policy and called it to Reliance's attention.[16] However, this is not an issue that is appropriately considered on a motion to dismiss for failure to state a claim.

For the reasons stated above we affirm the grant of summary judgment in favor of Lazzara, reverse the award of prejudgment interest, but remand for further proceedings, not inconsistent with this opinion, relating to the inclusion of interest for which Lazzara may be liable on the Bond judgment. As to the third-party complaint, we affirm the district court's disposition of all counts, with the exception of Count VII, as to which we reverse the grant of the motion to dismiss and remand for further proceedings not inconsistent with this opinion.

---

**16.** We need not resolve here the issue whether Reliance can rely on a defense that it would have had against a claim by Lazzara to defeat a third-party claim for contribution by Esser.